## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

OF THE

## STATE OF MISSOURI,

### MARCH TERM, 1909.

---

CLAUS H. ALBERS, Respondent, v. THE MER-
CHANTS' EXCHANGE OF ST. LOUIS, Appel-
lant.

**St. Louis Court of Appeals, June 8, 1909.**

1. **VOLUNTARY ASSOCIATIONS: Merchants' Exchange: Expul-
sion of Member: By-Laws to be Strictly Construed.** In a
proceeding to expel a member of a merchants' exchange, if the
authority therefor is sought to be sustained by implication aris-
ing from the by-laws, it should be denied, on the ground the
proceeding is penal in character, and hence the by-laws should
be strictly construed and should not be extended by implica-
tion, so as to effectuate a forfeiture.

2. ———: ———: ———: **Definition of Word "Settlement."**
According to a custom in vogue between members of a mer-
chants' exchange, where two members had respectively executed
contracts with each other, the one to sell and the other to buy

a certain article, the obligation was imposed upon them, upon a settlement of such transaction, to exchange such contracts with each other. *Held*, that the word "settlement," as used in this connection, involves the idea of mutuality between the parties and that they have reviewed the matter of account between themselves and adjusted the rights of each therein.

3. ————: ————: ————: **Case Stated.** Plaintiff and another exchanged contracts, whereby the former agreed to sell and the latter to buy a certain quantity of wheat on a certain date, subject to the rules and regulations of the Merchants' Exchange of St. Louis. On the delivery date, plaintiff having failed to deliver said wheat, the buyer appropriated from a fund deposited with him by plaintiff as margin for said trade, a sufficient amount to recompense him for the difference between the price plaintiff agreed to sell for and the delivery price fixed by said Exchange and remitted the balance to plaintiff, and requested plaintiff to surrender his contract, which plaintiff refused to do. Shortly afterwards plaintiff brought suit against said buyer and others, claiming that said price fixed by said exchange was fictitious and was brought about by means of a "corner" created by said defendants. The buyer then preferred charges against plaintiff with the board of directors of said exchange, in which it was sought to forfeit plaintiff's membership in said exchange, on the ground that he had failed to comply with the terms of a business contract, in that he had refused to surrender said contract to said buyer. After a trial on said charge, plaintiff was expelled. There was no by-law of said exchange requiring a member to surrender a contract at the consummation of same, but there was a by-law authorizing the board of directors to suspend a member who shall be guilty of failing to promptly comply with the terms of any business contract; and it was sought to uphold the order of expulsion on the ground said contracts provided they were subject to the rules and regulations of said exchange, and there was evidence of a rule or regulation, established by custom, whereby, upon a settlement of a contract being made, it devolved upon the member who held such contract to surrender the same. *Held*, that if there was such a custom, it obtained only when a settlement was had, and there was no such settlement between the parties to the contract involved here.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

**AFFIRMED.**

*R. F. Walker* for appellant.

A benevolent or non-trading corporation is not held to such strict conformity to its rules as is required of business or shareholding corporations, provided it appears that such benevolent corporation acted within the scope of the powers given by its articles and rules. Mulroy v. Knights of Honor, 28 Mo. App. 469; Brandenburger v. Jefferson Club, 88 Mo. App. 148. A complaint by a member of an exchange against another member, charging him with failure to perform a contract is sufficient under a rule providing for the disciplining of a member for such conduct. People v. Exchange, 149 N. Y. 401. A by-law of a Chamber of Commerce which provided for the disciplining of a member for his noncompliance with the terms of any contract was held to apply to all the business conduct and relations of the members of the association with each other, at least as to all contracts between them. Dickenson v. Chamber Commerce, 29 Wis. 45.

*Barclay & Fauntleroy* for respondent.

(1) The Hubbard and Moffitt Company had paid its own claim out of plaintiff's funds in its hands, and according to its own theory thereof. It had returned a balance of the funds; hence there could be no just claim on its part of a "failure" by the Albers Company "to comply promptly with the terms" of a business contract, under the rules of the Merchants' Exchange. Nanson v. Jacob, 93 Mo. 332; Johnson Com. Co. v. Railroad, 52 Mo. App. 408. (2) The contracts for sale and purchase of grain between these two Commission Companies were required by the statute of frauds to be in writing since they related to the sale of "goods, wares and merchandise for the price of thirty dollars or upward." Hence the papers were essential evidence of the transaction, which either party had the right to retain as evidence. R. S. 1899, sec. 3419. (3) The exchange's rule required a certain form of written contract of sale; but

the prescribed form is not negotiable and no holder could enforce it, after performance or other discharge of its obligations. Laws 1905, p. 243, sec. 1; Morris v. Lynde, 73 Me. 88; State ex rel. v. Huff, 63 Mo. 288. (4) The law of the land would not require the Albers Company to give up the paper evidence of these contracts, even if payment thereunder had been made willingly and in the ordinary way; still less, when the payment thereof is enforced, by the other party, as in the case at bar. Where the written evidence of indebtedness is (as here) not negotiable, its surrender cannot lawfully be demanded as a condition of payment or tender. Even a receipt may not be demanded as a condition to payment of money tendered. Kitchen v. Clark, 1 Mo. App. 435; Finch v. Miller, 5 C. B. 428; Strong v. Harvey, 3 Bing. 304; Evans v. Judkins, 4 Camp. 156; Laing v. Meader, 1 C. & P. 257. (5) There is no existing by-law of the exchange to authorize a motion of a member for failing to surrender the paper evidence or writing reciting a non-negotiable contract. The by-law in regard to "failing to equitably adjust and settle" a contract has no application where full payment has been made by act of the creditor himself (using the alleged debtor's funds). But even if there were such a by-law as is first above mentioned (and as the exchange contends the existing by-law means) it would be void, for such facts would not show any "offense which affects the interests or good government of the corporation, or is indictable by the laws of the land." R. S. 1899, sec. 1403. The statute quoted marks the limit of jurisdiction of the exchange. Beyond that, it has no power to make or execute any harsher by-law. People v. Fire Dept., 31 Mich. 465; Albers v. Exchange, 39 Mo. App. 583; State ex rel. v. Kennedy, 2 Mo. App. 96. Moreover, the by-laws or rules of the exchange forbid the Board to entertain any complaint "against members for non-fulfillment of matured contracts for

future delivery," "in case of non-delivery, when the money had not been tendered and the property demanded." The undisputed proof does not show that any money was ever tendered, or the property (the grain) was ever demanded by the Hubbard Company, so the jurisdictional facts were wanting, under the rules of the exchange, and hence no complaint should have been even "entertained by the board of directors," under their own by-laws. (6) The meeting of directors was not properly notified, and its action of suspension of plaintiff is void, because a call for such a meeting must mention that such extraordinary powers are to be exerted or invoked, so that all the directors may attend, if they desire. Here a majority made the decisive vote. A notice for such a meeting must indicate that the subject of action will be that of expulsion or suspension. Cannon v. Exchange, 27 Grant (Ch.) U. C. 23; People v. Assn., 18 N. Y. Supp. 491. (7) The facts of this record fail to show that the Hubbard Company ever tendered to the Albers Company the purchase money for the grain or demanded its delivery. Hence no such complaint as the Hubbard Company made (of mere failure to return the paper evidence of contract) comes within the power of the board to "entertain," under its own rules. The by-laws forbid the board's entertaining a complaint, "for non-fulfillment of matured contracts for future delivery," on such facts as this case reveals, and they require therefor a different affirmative showing which is wanting. The by-laws thus limit the exercise of the power of expulsion or suspension. R. S. 1899, sec. 1403; People v. Ben. Soc., 24 How. Pr. 216; Lysaght v. Stonemasons, 55 Mo. App. 538. The Hubbard Company could not assert a valid tender of the money (purchase price of the grain) even if their letter of May 7, 1904 could be construed as such, having imposed as a condition thereto, the surrender by the Albers Company of the written memorandum of purchase of the grain. Such conditional tender of payment

would have been unavailing (to say nothing of the failure to prove any tender whatever of the price, as a matter of fact). Henderson v. Cass Co., 107 Mo. 50; Morris v. Insurance Co., 116 Ga. 53, 42 S. E. 474; Handly v. Munsell, 109 Ill. 362; Elder v. Johnson, 115 Ga. 691, 42 S. E. 51; Loring v. Cooke, 3 Pick. 48; Menard v. DeGraffenreid, 103 Ga. 651, 30 S. E. 560; Balme v. Wambaugh, 16 Minn. 116; Moore v. Norman, 52 Minn. 83, 38 Am. St. 526; Glos v. Goodrich, 175 Ill. 20, 51 N. E. 643; Thayer v. Brackett, 12 Mass. 450; Ruppell v. Assn., 158 Mo. 622. (8) The deposit of Albers Company funds with the Hubbard Company was as "margins" or security for performance of the contracts of sale. When the Hubbard Company returned part of those funds to the Albers Company, and the latter accepted that part, there was no other adjustment, or settlement. The Albers Company did not thereby release or do any act to surrender any of its rights to the residue of its deposit. The final settlement of these contracts is yet to be adjusted; and the facts admitted by the default in this cause, whereby the Hubbard Company and Mr. Moffitt have confessed that these contracts were illegal and void, demonstrate that the Hubbard Company had no right to claim or to retain the funds of the Albers Company which it unceremoniously took the liberty to apply to satisfy its own unlawful demand. The default admitted the allegations of the petition as to the unlawful and void nature of the entire demand of the Hubbard Company under said contracts. R. S. 1899, secs. 769, 776; Robinson v. Lawson, 26 Mo. 69; Landon v. Ready, 1 Sim. & S. 44; Moore v. Sauborin, 42 Mo. 490; McCallon v. Waterman, 15 Fed Cas. No. 8675, 4 Cent. L. J. 413; McCutchin v. Batterton, 1 Mo. 342; Reed Bros. v. Nicholson, 158 Mo. 624; Jones v. Driskell, 94 Mo. 190; Orviss v. Elliott, 65 Mo. App. 96; Humphreys v. Darlington, 3 Greene (Iowa) 588; Patterson v. Ingraham, 23 Miss. 87; Bateman v. Pool, 84 Tex. 405 (19 S. W. 552) ; Robinson v. Const. Co., 53

Mo. 435. These principles are applied (under American Procedure) as well to proceedings in equity (as in the case at bar) and to statutory proceedings, as to actions at law. Caines v. Fisher, 1 Johns. Ch. 8; City v. Lang, 131 Mo. 412; Masterson v. Howard, 18 Wall. 99; Thompson v. Wooster, 114 U. S. 104. (9) As the Albers Company claimed that the Hubbard Company had no right to enforce the grain contracts because they were void (as charged in the undenied allegations of the petition) the plaintiff's company had the right to retain the paper evidence of the transactions until there was, in fact, a mutual settlement, or their rights had been otherwise adjudicated or adjusted. While "it was the custom to exchange contracts, when a settlement had been had of contracts between members" the very same evidence at the trial declares: "In this case there had been no settlement." Neither was there any evidence that the Hubbard Company delivered or tendered the counterparts held by the latter, except by letter of May 7, 1904 which was after the order of the board suspending plaintiff. But such a tender by letter would have been invalid even if timely. "The offer to pay is not the equivalent for an actual tender." Talty v. Trust Co., 93 U. S. 325; Kitchen v. Clark, 1 Mo. App. 430; Leask v. Dew, 92 N. Y. Supp. 891 (184 N. Y. 599); Bank v. DeGrauw, 23 Wend. 342; Russell v. Lytle, 6 Wend. 390; Cassville Co. v. Insurance Co., 105 Mo. App. 146. (10) The admitted and undenied facts show that the contracts were void because the Hubbard Company and the parties for whom it acted as agents had entered into them to further and execute a "corner" in the wheat which was the subject of these contracts. Kirkpatrick v. Bonsall, 72 Pa. St. 158; Diamond Glue Co. v. Co., 187 U. S. 611; Finck v. Granite Co., 187 Mo. 244; Scott v. Brown (1892), 2 Q. B. 724; Raymond v. Leavitt, 46 Mich. 447; Heileman Co. v. Peimeisl, 85 Minn. 121; Clews v. Jamison, 182 U. S. 461. (11) The general law of these corporations

does not permit the power of expulsion or supension to be exercised by a board of directors, without action by the corporate body at large. The statute does not expressly authorize the delegation of that power to the board, but the power is given to the corporation in the manner to be prescribed by the by-laws. This does not permit a committee or board to do more than to take the evidence and report to the body at large in such cases. R. S. 1899, sec. 1403; Evans v. Phila. Club, 50 Pa. St. 107; Gray v. Soc., 137 Mass. 329; Green v. Soc., 1 S. & R. 254; Med. Soc. v. Weatherly, 75 Ala. 248; Albers v. Exchange, 39 Mo. App. 583; State v. Chamber of Com., 20 Wis. 69. (12) Injunction is the proper and appropriate remedy to prevent the execution of an invalid order for the suspension of a member of such a body. Bartlett v. Exchange, 116 Wis. 450, 93 N. W. 473; Kolff v. Exchange, 48 Minn. 215, 50 N. W. 1036; Albers v. Exchange, 39 Mo. App. 583.

NORTONI, J.—This is a suit in equity for injunctive relief. Plaintiff recovered and defendant appeals. Plaintiff is a commission merchant in the city of St. Louis and president of the C. H. Albers Commission Company. Defendant, Merchants' Exchange, is a non-trading corporation, organized under Art. 11, Chap. 12, R. S. 1899, in regard to benevolent, religious, scientific, etc., corporations. Its purpose is to promote trade and facilitate business among its members. It appears plaintiff is a member of the Merchants' Exchange and as such enjoys the privileges of trading on the floor of that institution. The Hubbard & Moffitt Commission Company is likewise engaged in the commission business. The president of that concern is Mr. N. L. Moffitt, a commission merchant. He, too, is a member of defendant Merchants' Exchange, and as such enjoys the privileges of the floor of that institution for the purpose of trading. In the autumn months of 1903, at different times, plaintiff sold to the Hubbard & Mof-

fitt Commission Company a considerable quantity of number two red winter wheat, to be delivered during the month of December of that year. The sale mentioned was negotiated by the plaintiff, Mr. C. H. Albers, on behalf of his company, and by Mr. N. L. Moffitt, on behalf of the purchaser, The Hubbard & Moffitt Commission Company. In connection with these sales, plaintiff deposited as security for the performance of the contracts on the part of himself and his company with the Hubbard & Moffitt Company a sum of money in excess of twenty thousand dollars, and executed as evidence of such sales, at different dates, several contracts to the Hubbard & Moffitt Company. The contracts referred to were in the following form:

"St. Louis, Mo. ———.
"We have this day sold to (or bought of) and hereby agree to deliver to (or receive from) ——— bushels ——— at —— cts. per bushel, to be delivered at seller's option during the month of ——— in regular elevators. This contract is subject in all respects to the Rules and Regulations of the Merchants' Exchange of St. Louis."

These contracts were given into the possession of Mr. Moffitt for his company and were retained by it as evidence of its right to demand delivery of the wheat purchased. At the same time, and in conjunction therewith, Mr. Moffitt executed and delivered to the plaintiff for his company several contracts in like form evincing the undertaking of the Hubbard & Moffitt Company to receive the wheat when tendered in accordance therewith. The matter ran along until December 31, 1903, or the last day for delivery, and plaintiff failed to deliver the wheat theretofore sold to the Hubbard & Moffitt Commission Company. It appears that by competent authority of the Merchants' Exchange, of which both parties were members, the price of number two red winter wheat for delivery on December 31st, was ascer-

tained and fixed at ninety-two cents per bushel. Plaintiff having failed to deliver the wheat referred to, Mr. Moffitt declared the contracts therefor breached, and ascertained and determined his damage on account of the breach by calculating the difference between the price at which he purchased the same and the price of ninety-two cents per bushel fixed by the Merchants' Exchange on December 31, 1903, the day the delivery should have been made. To compensate for the damage thus ascertained, he appropriated a sufficient amount of the plaintiff's funds deposited with his company as margins, or, as otherwise stated, as security for the performance of the contract, to liquidate the damage, and remitted to the plaintiff the balance of those funds, in amount $1,790.25. This occurred some weeks after December 31st. About this time, plaintiff instituted several suits in the circuit court of the city of St. Louis against Messrs. Spencer, Milliken, and others, in which he alleged that the price of ninety-two cents per bushel for wheat, as fixed by the Merchants' Exchange on December 31, 1903, was fictitious, in that it was brought about through a corner in wheat which had been engineered by those gentlemen and by Mr. N. L. Moffitt and the Hubbard & Moffitt Co., which participated and acted as agents for Spencer and Milliken, and wrongfully participated in cornering the market. The record is quite indistinct in respect of these suits and the character of relief sought therein. Enough appears, however, to show that plaintiff, instead of acceding to the price of ninety-two cents per bushel for wheat on December 31, 1903, was continually combating it as fictitious. Some time after these suits were instituted, Mr. Moffitt, for the Hubbard & Moffitt Company, proffered to surrender to the plaintiff the several contracts held by him and his company against plaintiff for the purchase of the wheat and demanded of the plaintiff that he surrender as well to Mr. Moffitt and the Hubbard & Moffitt Company the several contracts which plain-

tiff held, requiring the Hubbard & Moffitt Company to
receive the wheat if tendered. However, at the time
Mr. Moffitt demanded his contracts from plaintiff and
proffered to surrender to plaintiffs the contracts which
he and the Hubbard & Moffitt Company held against
the plaintiff, he did not proffer to surrender plaintiff's
funds which he had theretofore appropriated to compen-
sate the alleged damages for the breach of those con-
tracts.    Plaintiff declined to accede to this request to
surrender the contracts referred to, insisting that he
had the right to retain possession of the same, probably
for use in the several law suits then pending with re-
spect to the alleged corner of the wheat market.    Not
having surrendered the contract referred to, Mr. Mof-
fitt preferred charges against plaintiff with the board
of directors of the Merchants' Exchange and alleged
that plaintiff had failed to comply with the terms of a
business contract or obligation, in this, that he refused
to surrender to him, Mr. Moffitt and Hubbard & Moffitt
Commission Company, various contracts which he held
requiring them to receive the wheat upon delivery dur-
ing the month of December, 1903.  The purpose in filing
these charges and the prayer of the complaint was to
the effect that the board of directors should discipline
the plaintiff for his conduct in that behalf by removing
or suspending him from membership in the Merchants'
Exchange.    Plaintiff was duly notified of these charges
and appeared before the board of directors of the Mer-
chants' Exchange for trial, insisting that the board
was without jurisdiction in the premises, for the rea-
son that he had violated no by-laws or precept of the
institution nor had he violated the terms of any busi-
ness contract.    The matter was inquired into by the
board of directors and on May 6, 1904, plaintiff was
found guilty of having violated the terms of a business
contract by not surrendering to Mr. Moffitt the several
contracts referred to and was therefore suspended from
membership and denied the privileges of the floor of

the institution for the remainder of that year; that is, until December 31, 1904. Plaintiff immediately applied to the circuit court of the city of St. Louis and sued out the writ of injunction in this cause, to restrain the defendant Merchants' Exchange from enforcing the resolution or order of its board of directors of May 6, 1904. Upon a hearing, the circuit court found the issues for the plaintiff and granted perpetual relief by enjoining the defendant Merchants' Exchange from excluding the plaintiff from his rights or privileges as a member thereof, by reason of such resolution of May 6, 1904. On appeal therefrom, defendant argues that its board of directors proceeded rightfully within its power and in accordance with its by-laws in suspending plaintiff and denying him the privileges of the floor of the Exchange, and that the circuit court erred in giving judgment to the contrary. Defendant concedes that it has no by-laws requiring a member to surrender contracts to another at the conclusion of any of the transactions between them. And it is conceded, too, that defendant has no by-law authorizing its board of directors in express terms to discipline or suspend a member for failing to surrender such contracts. The by-laws of the institution confer authority upon the board of directors, after proper notice and hearing therein provided for, to discipline, suspend or expel a member for numerous causes. Among those causes, the board of directors is authorized to discipline or suspend a member who "shall be guilty of failing to comply promptly with the terms of any business contract or obligation, or of failing to equitably adjust and settle the same." Of course, the latter specification of this by-law—that is, that portion of it authorizing a suspension of a member for failing to equitably adjust and settle a contract—has no application to the facts of this particular case, for the reason it implies that before it becomes of influence in the matter the parties shall have attempted to adjust or settle the controversy and one member has failed to

do so. This particular portion of the by-laws is not invoked by the appellant here, for in this case, the complainant, Mr. Moffitt, and his company, upon a breach of the contract, measured and ascertained the extent of their damage to their own notion and appropriated plaintiff's funds to the liquidation of such damage, without consulting him. In such circumstances, of course Mr. Moffitt and his company are in no position to complain of the refusal of Mr. Albers to equitably settle or adjust that matter. In fact, it appears that Mr. Albers had nothing whatever to do with the settlement or adjustment. The matter was determined by Mr. Moffitt and his company to their own satisfaction and as they saw fit, without consulting the wishes of Mr. Albers and his company in any manner.

Be this as it may, this particular feature of the transaction is unimportant at this time for the reason the proceeding to suspend plaintiff from his membership was not predicated on a violation of this provision of the by-laws, but, instead, it predicates upon the prior clause thereof, to the effect that the board of directors may suspend a member "who shall be found guilty of failing to comply promptly with the terms of any business contract or obligation." It is conceded that the contracts referred to contain no express terms requiring either party to surrender or exchange the same with the other. By reference to the contracts, the form of which is hereinbefore set out, it may be seen that no such express stipulation is contained therein. It is true, as argued by appellant, that the contracts recite that they are in all respects subject to the rules and regulations of the Merchants' Exchange. This recital does not operate to aid the case for the defendant by incorporating any express provision of the rules or regulations of the exchange therein to the effect that a member may be suspended for failing to exchange contracts, for it is conceded that the institution has no express rule or regulation in any manner expressly touching upon this

matter. It is argued, however, that there was and is a custom among the members of the exchange to surrender such contracts upon a settlement of the matters therein involved. To quote from appellant's brief, the precise argument presented, in speaking of plaintiff's refusal to surrender the contracts to Mr. Moffitt and his company, the following language appears: "This was in violation of the *custom and the purpose* of the rules of the exchange which contemplate not only that a settlement shall be made between the members, but that they shall be completely settled, and until so settled, the member has not complied with a business contract." Now from this, the appellant's theory of the case seems to be, that even though there is no express term in either the contract between the parties or the laws and regulations of the Exchange, requiring the surrender of such contracts, there is an implied term therein to that effect, which is acted upon by the members. Therefore, the proceeding in this case by the board of directors which sought to forfeit the rights of the plaintiff, for a time at least, to further participate as a member of the Exchange is predicated upon this implied term of either the contract or by-laws. It should be a sufficient answer to the entire proposition involved in this argument to reassert Judge GOODE's language, that words are never appraised at more than their real value when a forfeiture is sought in their name. [Morton v. Supreme Council, 100 Mo. App. 76.] In this case, it was sought to forfeit the rights of the plaintiff who is a member of the defendant corporation; and this, too, upon mere implication of authority, looking to that end. If the proceeding is sought to be sustained by implication arising from the by-laws the authority therefor should be denied upon the proposition that it is a penal proceeding and that by-laws and statutes which forfeit the rights of persons are penal in character. Such by-laws, like statutes of that character, are to be both construed and pursued strictly.

Nothing can be taken by intendment or implication to effectuate a forfeiture thereunder. In other words, the cause of forfeiture must fall within the terms of the law. [Lewine v. Sup. Lodge, 122 Mo. App. 547, 99 S. W. 821; Casey v. Transit Co., 116 Mo. App. 235, 91 S. W. 419; s. c. 205 Mo. 721.]

Now, touching the argument pertaining to the implied terms of the contracts in evidence to the effect of imposing the obligation upon the members of the Merchants' Exchange to exchange contracts upon a settlement of their transactions. If such a custom obtains, it appears by the record that it obtains upon a settlement being had between the parties to the contracts. Now, in this case there was certainly no settlement between the parties to the contracts. The evidence shows clearly to the contrary. The fact that Mr. Moffitt and his company declared the contracts breached and appropriated a sufficient amount of the plaintiff's funds in their hands to recompense the measure of damages in accordance with their own theory, without consulting plaintiff thereabout, certainly does not tend to show a settlement between the parties. It appears that plaintiff was contending all the time that the wheat market had been cornered by Moffitt, Spencer and Milliken, and that the price of ninety-two cents, by which Mr. Moffitt and his company measured their damages for the breach of the contract, was a fictitious standard, and improper for the purpose. To establish the validity of his claim to that effect, plaintiff instituted numerous suits in courts of competent jurisdiction, maintaining that he had been oppressed by means of the fictitious price established through a corner in wheat alleged to have been engineered by Mr. Moffitt, The Hubbard & Moffitt Commission Company, and others hereinbefore mentioned. When the record shows a clear case of dispute and contention between the parties, as here disclosed, there certainly could have been no settlement which, on defendant's theory of the

case, is an essential prerequisite to invoking the implied term of the contract affixing the obligation upon the parties to exchange contracts upon a settlement. In the sense employed, the legal significance of the term "settlement" is "An accounting; adjustment; liquidation in regard to amounts; as a settlement of accounts." [Standard Dictionary.] From this it is obvious that the word "settlement" involves the idea of mutuality between the parties; that they have, together, reviewed the matter of account, contract or otherwise, between themselves and adjusted the rights of each. Nothing appears in this case tending to show a settlement between the parties. According to the entire case presented, it appears that the implied term of the contract sought to be invoked here, if there be such an implied term, obtains only upon a settlement having been made between the parties. That is, that the obligation to surrender the contracts does not attach until a settlement has been made. And this would seem to be entirely proper, for as long as there is a dispute, it is certainly not improper for the parties to retain the writings evidencing the obligation on either side.

The judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.