BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN v. ADAY.

Opinion delivered January 30, 1911.

1. INSURANCE—BENEFIT CERTIFICATE—CONSTRUCTION.—A contract of a mutual benefit society, as witnessed by its certificate issued to a member and by its constitution relating thereto, should be construed according to the plain and obvious meaning of the provisions and with a view to accomplish the purpose for which the society is maintained and persons become members thereof.  (Page 429.)

2. SAME—BENEFIT CERTIFICATE—CONSTRUCTION.—A contract of a mutual benefit society should be construed most strongly against the insurer, and so as not to defeat a recovery by the beneficiary if it is susceptible of a meaning that will permit a recovery.  (Page 430.)

3. SAME—BENEFIT CERTIFICATE—TOTAL DISABILITY.—Under a benefit certificate permitting a recovery of the full amount of insurance whenever the beneficiary becomes totally disabled on account of "permanent paralysis of either extremities," a beneficiary is entitled to recover such amount whenever he becomes totally disabled on account of permanent paralysis of an arm.  (Page 430.)

4. SAME—WHEN TOTAL DISABILITY EXISTS.—Total disability of an insured exists, although he is able to perform occasional acts, if he is unable to do any substantial portion of the work connected with the occupation in which he was employed at the time the insurance was taken.  (Page 431.)

5. SAME—DIRECTING VERDICT.—Where the undisputed testimony established that the insured was permanently paralyzed in his left hand, and was therefore compelled to retire from his occupation, though one witness testified that without an operation his arm was permanently paralyzed, and the undisputed proof was that his condition was such that he was unable to procure the medical attention which might relieve his paralysis, it was not error to direct a verdict in his favor as being permanently disabled.  (Page 431.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit is on a benefit certificate for $1,500, numbered A-92592, taken out by appellee, a fireman, in the Brotherhood of Locomotive Fireman & Enginemen, when he joined the brotherhood in 1902. He went delinquent in 1906, but was reinstated, and it was alleged that while he was a member in good standing upon the books of the grand lodge his left hand became permanently paralyzed, which permanently and totally disabled or incapacitated him from performing all manual labor, which by

the terms of his beneficiary certificate entitled him to the payment of the full amount thereof; that he had duly filed his claim as required by the laws of the brotherhood, and payment thereof was refused. Appellant answered, admitting that appellee became a member of the Brotherhood of Locomotive Firemen & Enginemen, and that the certificate sued upon was issued to him; that he was suffering from paralysis of his left hand; denied that it occurred at the time and in the manner alleged; denied that said paralysis totally disabled or incapacitated him from all manual labor; that said paralysis is permanent, and that said paralysis is of either of plaintiff's extremities; denied that it promised to pay appellee $1,500 or any other sum; and alleged that he obtained said beneficiary certificate upon a false warranty that he did not have paralysis, which rendered it void.

A copy of the constitution of the Brotherhood of Locomotive Firemen & Enginemen was introduced in evidence, and section 70 provides:

"A beneficiary member in good standing upon the books of the grand lodge becoming totally and permanently blind in one or both eyes, or who may become totally and permanently disabled or incapacitated from performing all manual labor on account of Bright's disease of the kidneys, permanent paralysis of either extremities, locomoter ataxia, or consumption of the lungs in its last stage, shall be entitled to the amount of his beneficiary certificate," etc.

The testimony tended to show that Arthur S. Aday filed his claim for total disability under his benefit certificate in accordance with the constitution of the order, demanding the entire amount thereof on March 16, 1908, on account of permanent paralysis of his left hand; that his hand was not in as bad condition then as at the time of trial when he testified: "The condition of the hand at the present time is four fingers of this hand are dead, no feeling in them at all. I can pierce them with a knife, and still have no feeling in them. I am unable to grasp anything; I have no feeling whatever in those fingers. I have no grip with my thumb much, the only little grip that I have in that hand, though, is with my thumb. It is getting worse all the time." He testified that he had worked some in a pool room within 18 months before the trial, racking up the pool

balls, and also on the river while in Kentucky as the clerk of a boat, and two or three months on the railroad in Louisiana as a flagman after putting in his claim before he was taken out of the railroad service in August, 1908; that there is nothing the matter with his right hand.

Dr. H. A. Murphy testified that in May or June, 1909, he made an examination of appellee's hand at the request of an official of the Brotherhood of Locomotive Firemen & Enginemen.

"Q. State what you found upon your examination, please? A. I found the left hand totally paralyzed. Q. Would you say as an expert that the disability was permanent? A. It is. Q. Can he use and work with that hand? A. Not to perform what I think is manual labor. He could not do hard work."

Dr. L. L. Purifoy testified that in the summer of 1909, he made an examination of the hand of appellee at the instance of appellant, and that he found paralysis in his left hand.

"Q. Is it, in your opinion, a total or permanent disability? A. It is, without an operation. I think at this time, without an operation, that it would be permanent. Q. Would he have the use of his fingers? A. He would not at this time."

Dr. J. B. Wharton testified that he was the medical examiner for appellant, and in his official capacity wrote the following letter to the grand medical examiner of the order, and that everything in it was true to the best of his knowledge and belief:

"El Dorado, Ark., Sept. 1, 1908.

"Mr. W. B. Cory,

"Grand Med. Exam. Locomotive Fire. & Engr.,

"Cleveland, Ohio.

"Dear Sir: This is to certify that after a very careful examination of the conditions existing at present in the case of A. S. Aday, locomotive fireman on the Louisiana division, show that his left hand has atrophied and contracted to such an extent that it renders him disqualified to do any further train service or any manual labor. This condition did not exist in the least at the time I examined him twelve months ago this last June for position on the Louisiana division. At that time his hand had its natural full strength, and did not show any signs of weakness whatever, and has not until within the last two or

three months. There has been a steady weakening of the muscles of the hand and wrist. In my opinion condition was brought about as a result of loss in the nerve supply of the hand. In 1903 he sustained a deep cut on the anterior surface of the arm and lower third, severing a part of the main nerve supply ligaments of muscles of the arm and forearm. I claim that this injury received at that time has brought about the present existing condition of the hand. This injury he received· was done while on duty on an engine on the Illinois Central Railroad during a wreck. He was thrown through a cab window, cut his arm; and I wish· to recommend that he be paid the full amount of his insurance in the brotherhood, in order that he may be able to go to some eminent specialist and try to have.his hand and arm saved before it is too late; and, unless he receives this money, he will be unable to get the attention he necessarily must have in order to try to save his hand and have it restored to anything like its normal condition again. He has not the necessary funds in sight to receive the proper attention that he should have. On account of this injury and loss of strength in his hand, he has been forced to retire from any further service of the railroad company, so you can readily see the position it places him in. Now, I take the liberty to recommend to you and the officers of the Brotherhood of Locomotive Firemen & Enginemen that he be paid the full amount of his policy; and if I did not think it justifiable, I would not as your medical examiner recommend this done.

        "Yours very truly,

          "Dr. J. B. Wharton,

"Med. Exam. for Pine Hill Lodge No. 618, El Dorado, Arkansas,

  Med. Exam. O. R. C. B. of L. F. & E., and B. of R. T."

  "Subscribed and sworn to before me this the 1st day of September, 1908.      "James Carroll, Notary Public.

  "I solemnly swear that the statements made in this letter are the facts.         (Signed) "A. S. Day.

  "Subscribed and sworn to before me this 1st day of September, 1908.

  (Seal.)       "Jas. Carroll, Notary Public."

  The court directed the jury to, find a verdict for plaintiff for the amount sued for, and from the judgment defendant appealed.

*R. L. Floyd,* for appellant.

The court erred in giving a peremptory instruction for appellee, because there was evidence to support a finding by the jury that the paralysis was not permanent; that it was not total; that he was not totally disabled or incapacitated from performing all manual labor; and that he was suffering from paralysis at the time he made application, but warranted in his application that he had never had it. The paralysis, to be available as a cause of action, must have been of both arms, or both legs. Section 70 of appellant's constitution means that the paralysis to form a basis for indemnity must be of both members of either pair of extremities. Century Dictionary, "Either;" *Id.* Extremity, 2.

The question of total disability is one of fact for the jury to determine. 89 Wis. 19; 26 L. R. A. 741. As to what constitutes total disability, see 54 Mo. App. 468; 46 Ia. 631; 62 Kan 75.

*E. O. Mahoney* and *Powell & Taylor,* for appellee.

The court was right in directing a verdict for the appellee. In the light of the evidence, the minds of reasonable men could not differ as to the permanency of the paralysis with which appellee is afflicted, and that it is total. The constitution of the order itself declares that all laws shall be liberally construed for the purpose of effecting the objects and purposes for which the order was founded. Surely the present attempt to hide behind the little subterfuge that an operation, properly performed, *might restore him,* when it is apparent that he is unable to procure any kind of operation, is not in keeping with the genius and spirit of the order. That he is totally disabled or incapacitated from performing all manual labor is sustained by the evidence, and appellant's contention to the contrary is fully answered by this court in 127 S. W. 457. See also 70 Central Law Journal, date June 10, 1910.

KIRBY, J., (after stating the facts). It is contended first that, if appellant had permanent paralysis of his hand, it was not "permanent paralysis of either extremities," within the meaning of the constitution of the order; second, that he was not thereby "permanently and totally disabled or incapacitated from performing all manual labor" and entitled to the amount of his

beneficiary certificate; third, that the court erred in giving a peremptory instruction in favor of plaintiff.

The contract, and constitution relating to it, should be construed according to the plain and obvious meaning of their provisions and with a view to accomplish the purpose for which the brotherhood is maintained and persons become members thereof; and as this court said in *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417: "The contract sued on is like any other insurance policy, and its provisions should therefore be construed most strongly against the insurer. As the language employed is that of the defendant, a construction will not be adopted which will defeat a recovery if it is susceptible of a meaning that will permit one. *American Bonding Co.* v. *Morrow,* 80 Ark. 49; *Title Guaranty & Surety Co.* v. *Bank of Fulton,* 89 Ark. 471."

1. The extremities of the body are four in number, and "either" is one indifferently, any one of them; and the permanent paralysis of a hand resulting from a cut on the arm brought appellant within the meaning of the term "permanent paralysis of either extremities" as expressed in section 70 of the constitution.

2. The purpose of the brotherhood, and the object of the contract, was to protect the beneficiary from the loss of time and wages caused by disease and injury, and provide a fund for his support if the injury "totally and permanently disabled him from the performance of all manual labor;" in other words, from earning a livelihood. "Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists, although the insured is able to perform occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business," etc. Kerr on Insurance, § § 385, 386; 4 Joyce on Insurance, § 3031.

Our court said in *Industrial Mut. Ind. Co.* v. *Hawkins, supra:* "Total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case.

It must depend largely upon the occupation and employment and the capabilities of the person injured."

The testimony shows that appellant was a locomotive fireman and engaged in the railroad service; that he took this beneficiary certificate to indemnify him in case of loss of time and wages occasioned by injury from the hazard of his employment or the diseases specified in the contract that might destroy his ability to continue therein. The undisputed evidence shows that because of this permanent paralysis of his hand he is not longer able to perform any railroad or train service whatever, and has been compelled to retire from such service because of said injury. It incapacitated him, not only from some of the duties incident to his service in some lines of railroad employment, but from the performance of all the duties of every kind in that service—the only one to which he was trained and accustomed, and in which he was employed at the time of taking membership in this brotherhood, whose purpose was to protect him while engaged in such service.

It was evidently the intention of the parties to protect the beneficiary and permit him to recover the full amount of his certificate upon the occurrence of any one of the causes specified when it permanently and entirely incapacitated him from all service of any kind whatever in the railroad employment. Section 69 of the constitution of this order lends weight to the correctness of this view and construction, since it allows a beneficiary member sustaining the loss of a hand or a foot by actual separation to receive the full amount of his beneficiary claim; and we can see no difference between the total incapacity of the member by the loss of a hand by actual separation and its absolute loss of usefulness by paralysis thereof, and hold that it was such a permanent and total disability as was in the contemplation of the parties in the making of this contract.

3. That the court erred in directing a verdict for appellee. The undisputed testimony showed that his left hand was paralyzed, that the four fingers of it were atrophied or "dead, no feeling in them at all," as he expressed it; that he was unable to grasp anything; that he had very little grip in his thumb, and that his hand was getting worse all the time; and that because of it he was unable to perform, and compelled to retire from, any

further railroad service whatever. Two of the three experts employed by appellant to examine him testified that the left hand was paralyzed and the disability permanent, and the other that without an operation it was permanent paralysis; and the proof was undisputed that his condition was such that he could not procure the service of such an eminent specialist as would be able to perform the operation that might result in preventing the disability from continuing permanent. There was no conflict in this testimony. It was undisputed that his left hand was permanently paralyzed unless, as one expert thought, it might possibly be cured by an operation by such an eminent specialist as the undisputed testimony showed he had no means to employ.

Under our view of the case, there was no question for the jury, and the court did not err in directing their verdict. Judgment affirmed.