Hillsborough, }
 Jan 4, 1916. }

RALPH O. BACHMAN *v.* THE TRAVELERS INSURANCE COMPANY.

Where an accident insurance policy provides that proofs of continuing loss shall be furnished at stated intervals, non-compliance therewith cannot be relied upon, if before the time for filing such proofs the insurer disclaimed all liability, with knowledge that further payments would be due.

In an action upon an accident insurance policy to recover a stipulated amount for a period of total disability, the fact that during such period the assured received certain sums as salary and commission from his employer does not preclude his recovery of the stipulated amount, where there is evidence that his mental faculties were so impaired that he was incapable of performing services of any value.

Where a release has been obtained by a fraudulent representation that it was only a receipt for money and the true character of the instrument does not become known to the plaintiff until he demands the right thus apparently released, his knowledge prior thereto that the defendant claimed to have settled with him does not preclude him from avoiding the release: the rule that the avoidance of an agreement for fraud must be sought within a reasonable time has here no application.

In an action for an intentional wrong, contributory negligence is not a defence.

Fraud will invalidate a release procured thereby though the fraud would not have deceived a person using ordinary prudence.

A finding by the trial judge that an opening statement by counsel, embodying an erroneous view of the law, was made in good faith and did not render the trial unfair, is controlling when supported by a sufficient basis in fact and reason.

Upon the issue whether a proof of claim was executed because of an erroneous understanding, evidence of conversations tending to show how the misunderstanding arose is relevant as corroborating the contention that it existed.

Upon the issue whether a certain law suit was an afterthought of the plaintiff, evidence that he asserted his claim at an earlier time is relevant.

Opinions as to mental condition need not be expressed according to any particular formula.

A written notice is not a contract, but is merely the vehicle to transmit certain information, and, when it appears from the testimony of the party giving and the one receiving such notice that both understood its contents and effect in the same way, the strict meaning of the language of the notice is unimportant.

ASSUMPSIT, on an accident insurance policy issued to the plaintiff. Trial by jury and verdict for the plaintiff.

Transferred from the January term, 1915, of the superior court by *Pike*, C. J.

The policy provided for a payment of $50 a week during total disability and $25 a week for twenty-six weeks partial disability, and that proofs of claims must be furnished at the end of each thirteen weeks. The verdict is for $50 a week from the date of the accident to the date of the writ, less the sum already paid.

The plaintiff was a traveling salesman for wholesale druggists' supplies, well versed in the details of the business, capable of computing the cost of desired compounds, and possessing generally the traits essential to a successful prosecution of his vocation. He received a severe injury to his head on June 6, 1912, and admittedly was totally incapacitated for nine weeks. Thereafter he was able to go about, and attempted to resume his occupation. Before this he had been employed at a salary of $250 a month, but afterwards he was paid a commission on the orders which he sent in. Some of these orders he took when he called upon customers and some were sent to him by mail. For services so performed up to about February, 1913, he received $280. At that time he was employed by another firm on a salary, but was discharged in about two months, being paid $550. He has done no work as a salesman since.

There was evidence tending to show that after the accident the plaintiff lost all his agreeable traits of character, his knowledge of values, and his capacity to compute costs, that he was subject to epileptic attacks, that he was crazy, that his attempts to work made him worse, and that his condition had not improved but rather the contrary.

The policy was solicited and delivered by one Dumbleton, whose

name appeared on it as the defendant's agent and to whom the plaintiff paid the premiums. The plaintiff filed his first thirteen weeks' proof for nine weeks total and four weeks partial disability. His claim at the trial was for continuous total disability. In the opening, counsel stated that the proof was made for partial loss after nine weeks because Dumbleton told the plaintiff that after he was out of the house he could recover only for a partial loss. The claim was advanced that Dumbleton was the agent of the defendant and that it was chargeable with his representations in this respect. After some discussion the court ruled that Dumbleton was not an agent for this purpose, but that the plaintiff might show how he was advised by Dumbleton in explanation of why the claim was made for partial disability only. It was found that the offer of proof was made in good faith, and that the trial was not thereby rendered unfair. The defendant excepted to the offer of proof and to the admission of the evidence as limited.

September 30, 1912, the plaintiff received from the defendant through its adjuster $650. The defendant claimed this sum was paid in full settlement of all liability for the injury, and it put in evidence a "final proof," a draft which recited a satisfaction in full, and a formal release, all signed or endorsed by the plaintiff.

The plaintiff's evidence tended to show that he was incapable of doing business on September 30, that he was about to go to Pennsylvania, under physicians' orders, to see if a protracted rest in the country would help him, that the amount paid him was only the $550 admittedly due for the first thirteen weeks' period and $100 advanced on account of the next, which was substantially all then accrued, that the adjuster represented that the payment was on account and deceived the plaintiff as to the contents of the several documents.

Shortly thereafter the defendant's general agent wrote the plaintiff that his policy would not be continued and that "if the risk is presented a year hence they should have information as to the present condition and history of any trouble from the injury subsequent to the payment of the claim to you recently." The agent testified that he intended this letter to give the plaintiff to understand that his claim had been compromised and that there was no further liability under the policy. The plaintiff understood the letter as the agent intended it to be understood. After the receipt of this letter the plaintiff had no communication with the defendant until December, 1913.

The defendant claimed that the plaintiff well understood that his claim was settled, and that the plan to prosecute it originated at a much later time. Subject to exception, the plaintiff was allowed to show that he complained to Dumbleton about the defendant's assertions soon after receiving the agent's letter, and that he declared his intention to sue the defendant as soon as his case against the railroad was finished. There were also exceptions to certain opinion evidence which are stated in the opinion.

The defendant's motions for a nonsuit and a directed verdict, and its requests for certain instructions to the jury (the substance of which are stated in the opinion) were all denied subject to exception.

*Taggart, Burroughs, Wyman & McLane,* for the plaintiff.

*Branch & Branch* and *Streeter, Demond, Woodworth & Sulloway,* for the defendant.

PEASLEE, J. The main issues of fact between the parties appear to have been whether certain releases signed by the plaintiff were procured through the fraud of the defendant's adjuster, or while the plaintiff was mentally incapacitated, and the extent of his disability. The exceptions relate to the admission of evidence, the denial of a nonsuit, and instructions to the jury.

I. It appeared that the insurance was solicited, and the policy delivered by one Dumbleton, who collected the premiums, and whose name as agent appeared upon the back of the policy. Plaintiff's counsel claimed in opening that these facts made Dumbleton the defendant's agent, so that his statements as to liability, made to the plaintiff after the injury, would bind the defendant. The court ruled that this position was not well taken, but that the statements were admissible on other grounds. Later, Dumbleton testified subject to exception that before the plaintiff filed his first proof of loss witness explained to him that as soon as he was able to be out of the house his disability under the policy became partial only, that the plaintiff complained to the witness that the company had not paid as it should have done, whereupon the witness called up the defendant's adjuster and arranged for an interview, and that, shortly after the plaintiff learned that the defendant claimed it had settled with him fully, he told the witness that he proposed to proceed against the company as soon as his suit against the railroad was disposed of.

The claim made in the opening was the not unusual one of counsel urging a view of the law which is not sustained by the court. The finding that this was done in good faith and that the trial was not thereby rendered unfair, has a sufficient basis in fact and in reason and is therefore controlling here. *Burnham* v. *Stillings*, 76 N. H. 122, 129.

The evidence that Dumbleton told the plaintiff what partial disability meant and that the plaintiff acted accordingly, was a reasonable explanation of the discrepancy between the signed proof and the claim made at the trial. In the effort to show that the proof was executed as it was because of an erroneous understanding, it was permissible for the plaintiff to show how a misunderstanding arose, as corroborating the contention that it existed. As stated by the justice presiding at the trial, "the statements made by most any individual might have a bearing on why he acted in that way."

It was apparently the defendant's position that this suit was an afterthought, and that the plaintiff well understood that he had settled the matter and acquiesced in the situation for over a year. In reply to this, it was competent to show that the plaintiff asserted his claim at an earlier time. *State* v. *Saidell*, 70 N. H. 174, 176.

The opinions of the physician and of the plaintiff's wife as to his mental condition were properly received. *Hardy* v. *Merrill*, 56 N. H. 227. The opinion need not be expressed according to any particular formula. *State* v. *Pike*, 49 N. H. 399, 426. The wife's statement that she did not think her husband "capable of taking care of the policy," and the physician's testimony that he thought the plaintiff incapable of transacting complex business, were both assertions of the witnesses' opinions touching the plaintiff's mental state.

II. The policy provided that proof of continuing loss should be furnished each thirteen weeks. This was not done except on the first occasion therefor, and the plaintiff seeks to avoid the effect of the omission upon the theory that the defendant had denied all liability to him before the time for filing the later proofs arrived. *Seely* v. *Insurance Co.*, 72 N. H. 49, 54. The question upon the motion for a nonsuit is whether there is substantial evidence of such denial of liability. *Perry* v. *Insurance Co.*, 67 N. H. 291, 296.

The defendant claimed that it had obtained a full release from the plaintiff, and its general agent wrote to him stating that the company had decided to cancel the policy, and that before it could

be renewed the company "should have information as to the present condition and history of any trouble from the injury subsequent to the payment of the claim to you recently." The agent who wrote the letter and the plaintiff who received it both understood that its contents amounted to a declaration that the plaintiff had been settled with in full, and had no further claim upon the company. It is unnecessary to consider what other evidence there was upon this question, for that which has already been stated plainly warranted a finding that the defendant refused to pay more and so informed the plaintiff. What the strict meaning of the language of the letter may be is not important here. It is not a contract, nor is it a document whose contents were understood differently by the contending parties. It is merely the vehicle used by the defendant to transmit to the plaintiff the desired information. It may be poorly constructed for such a task; but when it has performed the duty assigned to it, it is idle to argue that the duty has not been done. The agent's testimony that he wished the plaintiff to understand that his claim had been adjusted and that there was no further liability under the policy, and the plaintiff's testimony that he did so understand the defendant's statement, warranted a finding that by this means of communication the defendant had informed the plaintiff of the position it took.

But it is further argued that the denial of liability cannot work an estoppel in the matter of proof of loss because the defendant did not know the plaintiff claimed any continuing liability. It could be found from the evidence that when the letter was written the defendant knew that the plaintiff was still disabled, that it knew he understood he had been paid according to the terms of the policy up to October 3, 1912, and that further payments under the policy would be due to him. The defendant's argument on this point assumes the view of the evidence most favorable to it, instead of that which tends to sustain the plaintiff's case. Of course the latter must be taken here.

The claim is also made that the plaintiff cannot now avoid the releases for fraud because he failed to act within a reasonable time after the fraud was discovered. The argument assumes that during the year which elapsed between the defendant's denial of liability and the plaintiff's bringing suit the plaintiff knew the defendant had the releases. But according to the plaintiff's evidence all he knew was that the defendant claimed it had settled with him. This he did not agree to. From his standpoint there was nothing to rescind, and the rules relating to that subject had no application.

The other ground stated in the motion for a nonsuit is that a release was conclusively established by the evidence. It does not require extended consideration. There was evidence of the plaintiff's mental incapacity when the release was executed, as well as testimony from which fraud in procuring the release could be found. The motions for a nonsuit and directed verdict were properly denied.

III.   The defendant's first three requests for instructions amount to specifications of grounds for directing a verdict in its favor and are disposed of by what has already been said.

The fourth and fifth requests are to the effect that a successful fraud cannot be complained of, if it would not have deceived a person using ordinary prudence. The question is not an open one in this state. Whatever doubt upon it might be entertained on the earlier cases, it is now settled that in an action for an intentional wrong contributory negligence is not a defence. "The law makes it the duty of everyone to, use ordinary care to avoid being injured by another's negligence; but it imposes on no one the duty to use such care to avoid being injured by another's intentionally wrongful act. In actions for negligence, contributory negligence is a defence; in actions for intentional injuries, it is not." *Cunningham* v. *Company*, 74 N. H. 435, 437. "If the misrepresentation is made with a fraudulent intent, it is only necessary for the party defrauded to show that in relying upon the representation he honestly believed it to have been true. The question of his knowledge, or equal means of knowledge, of the truth of the facts included in the representation is material only as showing whether he in fact relied upon the representation and whether his belief was honestly entertained." *Conway Bank* v. *Pease*, 76 N. H. 319, 328.

The exhaustive consideration of the subject in the cases cited, and of the nature of the wrong which is the basis of actionable fraud in *Shackett* v. *Bickford*, 74 N. H. 57, renders further examination of the matter at this time unnecessary. So far as the earlier cases relied upon by the defendant give countenance to the idea that contributory negligence is an answer to a suit for deceit, they have been overruled by those above referred to.

The defendant's other requests for instructions which it has argued raise the question whether there was evidence to submit to the jury upon the issue of the plaintiff's total disability for a term exceeding nine weeks. It appears that during the period in question the plaintiff, who was a traveling salesman, went out upon the road at different times. He took some orders and others were sent to him,

and he received as compensation $830. The defendant claims that these facts show conclusively that at this time the plaintiff was not wholly disabled. It is probably true that if these had been all the facts put in evidence the position would have been well taken. But there was also evidence tending to prove that during all this time the plaintiff's mental faculties were so impaired that he was incapable of performing services of any value whatever in his line of business, and that the orders taken did not result from valuable services performed by him to that end. With this evidence in the case, it was a question of fact whether the plaintiff did or did not have substantial and valuable earning capacity during that time.

It is urged that because the plaintiff went about as he had done, received some orders and was paid, therefore it cannot be found that he was without earning capacity; that since his efforts produced revenue total disability could not be found; that one who earns must have earning capacity. The answer to this is that it could be found the payments were made for what his employers believed he did for them, when in fact he did nothing of the kind. In short, it could be found that his capacity to get and hold trade was gone, although neither he nor his employers fully realized the situation until a later date.

The contract is not one of indemnity against loss of income. It insures against loss of capacity to work. The issue is not whether money has been received but whether work has been, or could have been done. Assuming, therefore, that the strict test of total disability should be applied, there was evidence to be submitted to the jury, and the requested instructions were rightly denied.

*Exceptions overruled.*

All concurred.