20273. MARCHANT *v.* NEW YORK LIFE INSURANCE
COMPANY.

DECIDED AUGUST 29, 1930.   REHEARING DENIED SEPTEMBER 29, 1930.

14

18

*Hill & McElvey,* for plaintiff.

*Bryan & Middlebrooks, J. B. Gardner,* for defendant.

BELL, J. (After stating the foregoing facts.)

1. A motion to dismiss a case upon the ground that under the pleadings and the evidence there can be no legal recovery is never a proper motion where the petition sets forth a cause of action, no matter whether the evidence fails, or to what extent it may fail, to sustain the allegations made. · Such a motion is different from a motion for a nonsuit, since it relates to the sufficiency both of the petition and of the evidence, while a motion for a nonsuit is in the nature of a demurrer to the evidence only. In the brief filed in this court for the insurer, counsel do not even contend that the petition failed to state a cause of action, the argument being devoted wholly to the sufficiency of the evidence to prove total disability within the meaning of the policies or to sustain the allegations of the petition; but regardless of the position taken by counsel, either in this court or in the trial court, it is clear that the petition did not fail to allege a cause of action, and that it was therefore not subject to an oral motion to dismiss in the nature of a general demurrer. Such was the character of the motion made, so far as it applied to the petition, and it should have been overruled. *Kelly* v. *Strouse,* 116 *Ga.* 872 (4 *a*) (43 S. E. 280); *Rountree* v. *Seaboard Air-Line Ry. Co.,* 31 *Ga. App.* 231 (120 S. E. 654); *Hughes* v. *Weekley Elevator Co.,* 37 *Ga. App.* 130 (1) (138 S. E. 633). However, if the allegations were not proved by the evidence it would doubtless be correct for this court, instead of ordering a reversal, to affirm the judgment of dismissal, with direction that it operate only as a judgment of nonsuit, and not as an adjudication of the insufficiency of the petition to state a cause of action. *Hughes* v.

*Ga. Ry. & Electric Co.,* 126 *Ga.* 462 (55 S. E. 229). So we have the question of whether the evidence would have authorized a verdict in favor of the plaintiff.

2. There is no insistence that the evidence did not show a permanent disability, but the chief contention is that the disability was not total within the intent and purview of the policies. Each of the policies provided that "disability shall be deemed to be total whenever the insured is wholly disabled by bodily injury or disease, so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit;" and it is the construction of this clause and the applicability of the evidence to it which present the further problem for determination by this court. Upon the question of the proper construction of the policy the case is virtually controlled by the decision of the Supreme Court in *Cato* v. *Ætna Life Insurance Co.,* 164 *Ga.* 392 (138 S. E. 787). In that case the language of the policy was as follows: "If total disability of any employee entitled to insurance, under the schedule of insurance contained in this policy, begins before the age of 60, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy." Attention is here called to the fact that the policy in the *Cato* case did not, like some policies, provide merely for a disability to follow the usual occupation or employment of the insured, or to transacting any business pertaining to such occupation, but said that the disability insured against must be such as to prevent the insured "from pursuing any occupation for wages or profit." Notwithstanding this language, the Supreme Court laid down the following principles as governing the rights and liabilities of the parties under such a policy: "Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living. . . When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his

customary and usual manner. . . Total disability does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence require him to desist, and he does in fact desist, from transacting his business. In such circumstances total disability exists." There is no substantial difference between the disability clause considered in the *Calo* case and those involved in the instant case; and we could not here apply the rule of strict construction contended for by the insurer, without doing violence to the precedent which inheres in that case.

It is suggested by counsel for the defendant that the policy in the *Calo* case was a group policy issued for the protection only of employees of a particular industrial institution. However, the liberal construction adopted in that case does not appear to have sprung from this fact, and an examination of the cases cited in support of the decision lends force to the inference that the Supreme Court did not intend to express a doctrine which should be applicable only to group insurance. In Hurley *v.* Bankers Life Co., 198 Iowa, 1129 ('199 N. W. 343, 37 A. L. R. 146), the Supreme Court of Iowa, after noting that cases of this character fall readily into two general classes, namely, "those wherein the policy provides for indemnity if the insured is disabled from transacting the duties pertaining to the occupation in which he is then engaged, and those wherein the policy provides for indemnity if the insured is disabled from performing any work or following any occupation," stated that the case then for decision belonged to the latter class, since the disability there insured against must have been such as prevented the insured "wholly from performing any work or following any occupation for compensation or profit." The ruling was that the loss of a leg by an uneducated farmer, compelling him to use crutches and preventing his doing any effective work on the farm, was not within the meaning of a policy providing compensation for a total, permanent, incurable disability preventing him permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit. But in the course of the opinion it was recognized that numerous courts in other jurisdictions had applied to like policies an interpretation more favorable to the insured, and the doctrine of stare

decisis apparently influenced the result in that case. The decision followed the earlier case of Lyon *v.* Railway Pass. Assur. Co., 46 Iowa, 631, as to which the court in the Hurley case said: "The Lyon case was decided in 1877. Contracts of insurance in this state have presumably been entered into in view of that decision since that time. The effect of the holding can easily be obviated by a change in the phraseology of the contract. We are not disposed to now overrule the Lyon case, or depart from the rule therein announced. If it were a case of first impression, we would find much persuasive argument in appellant's contention. The parties have a right to choose the terms of their contract, and, while such a contract must be construed liberally in favor of the insured, we can not substitute other terms for those that the parties have seen fit to adopt." Among the cases which were said to take an opposite view were the following: Foglesong *v.* Modern Brotherhood, 121 Mo. App. 548 (97 S. W. 240); Monahan *v.* Supreme Lodge, 88 Minn. 224 (92 N. W. 972); James *v.* United States Casualty Co., 113 Mo. App. 622 (88 S. W. 125); Rathbun *v.* Globe Indemnity Co., 107 Neb. 18 (184 N. W. 903, 24 A. L. R. 191); Lobdill *v.* Laboring Men's Assn., 69 Minn. 14 (71 N. W. 696, 65 Am. St. R. 542, 38 L. R. A. 537); Davis *v.* Midland Casualty Co., 190 Ill. App. 338; Wall *v.* Continental Casualty Co., 111 Mo. App. 504 (86 S. W. 491); Grand Lodge *v.* Orrell, 206 Ill. 208 (69 N. W. 68); Brotherhood of Locomotive F. & E. *v.* Aday, 97 Ark. 425 (134 S. W. 928, 34 L. R. A. (N. S.) 126); Industrial Mutual Indemnity Co. *v.* Hawkins, 94 Ark. 417 (127 S. W. 457, 21 Ann. Cas. 1029, 29 L. R. A. (N. S.) 635). See further, in this connection, Metropolitan Life Insurance Co. *v.* Bovello, 56 App. D. C. 275, 12 F. (2d) 810, 51 A. L. R. 1040; Equitable Life Assurance Society *v.* Serio, 155 Miss. 515 (124 So. 485).

In the case of Foglesong *v.* Modern Brotherhood, supra, the policy provided for indemnity in case of "permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling." The court declined to construe this provision as meaning that no recovery could be had if the insured was able to carry on any vocation whatever, saying "we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities and to make them the instruments of extracting dues from policyholders, with-

out creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing, and without sight, following a vocation; some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade, or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used, which would have the effect to defeat the purpose of the contract and render it a nullity."

It appears from the evidence in the instant case that before the injury the insured was an active business man engaged in several occupations: (1) farming, (2) sawmilling, (3) selling hogs and cattle, and (4) buying cottonseed and selling fertilizer for a named trading company on a salary and commission basis. With regard to the instant policies, the four lines of business should be treated as a unit of employment, and the insured should be considered as totally disabled within the meaning of the policies if forced by his condition to desist from substantially all of the usual and customary duties of such employment. In Metropolitan Life Ins. Co. v. Bovello, supra, it appeared that the insured, in applying for the policy, stated his occupation as ticket-agent, notary public, and musician. In the opinion the court said: "While there is not an entire harmony of views as to the interpretation to be given to contracts substantially like or much similar to the one here, yet we are satisfied the weight of authority is that it was only incumbent upon the plaintiff to show by the fair balance of testimony that he was, by reason of disease or sickness, directly and independently of all other causes, unable, in the exercise of ordinary or common care and prudence, to transact or perform the substantial and material acts necessary to the performance of the duties of each and all of his occupations." As involving a two-fold occupation, see Neafle v. Manufacturer's Accident Indemnity Co., 55 Hun. 111

(8. N. Y. S. 202). The jury, in the present case, could have believed from the plaintiff's testimony, that, while he had previously performed the usual and ordinary duties of each of the four occupations referred to, he was, after the injury, substantially disabled from engaging in any of such activities, except that at great suffering and inconvenience he could perhaps attend to some of the duties for which he had been employed by the trading company; but even as to this employment he testified in effect that he had been compelled to take a partner to whom he merely let his name and influence, with no agreement as to the division of profits, except that the partner was to "make it satisfactory" to him.

The fact that the plaintiff attempted for a season to carry on this line of employment, before ascertaining his inability to do so, and refraining from such employment, should not prevent a recovery for benefits *thereafter accruing* under the provisions of the policies; and this is true even though such employment had been his only occupation. The fact that the insured may not have realized a profit from an occupation engaged in by him would not be determinative of the question of his ability to engage in such occupation for remuneration or profit within the meaning of the policies. On the other hand, he should take his chances of success or failure from ordinary causes the same as other men. But this was not the necessary inference here, since the testimony tended to show that the plaintiff's failure to make anything out of his employment by the trading company was due to the expense of travel and of hiring help, which he was forced to incur by reason of his disability. But, aside from this, the evidence warranted the conclusion that the plaintiff was unable to engage in the business of farming, or sawmilling, or dealing in live stock; and on the whole we think the case was one that should have been submitted to the jury under the evidence.

We will now examine two decisions by this court which are mainly relied on by counsel for the insurance company, namely, *Parten* v. *Jefferson Standard Life Insurance Co.*, 30 *Ga. App.* 245 (117 S. E. 772), and *Whitton* v. *American National Ins. Co.*, 17 *Ga. App.* 525 (87 S. E. 827). The *Parten* case was based upon a policy which provided in terms that it should be governed by the laws of the State of North Carolina; and this court in construing the policy followed the decision of the Supreme Court of that State

24

in the case of Buckner *v.* Jefferson Standard Life Ins. Co., 172 N. C. 762 (90 S. E. 897). This case does not appear among those listed above as examples of the more liberal interpretation in favor of the insured, but, on the contrary, it belongs to an opposite class, as shown in the decision in the Hurley case, supra. The *Whitton* case is distinguished from the present case because of the wide difference in the disability clauses. The contract in that case not only provided that the disability must be such as to "render it impossible for him to engage in any gainful occupation whatever," but expressly declared that "the total and permanent disability referred to must be such that there is neither then nor at any time thereafter any work, occupation, or profession that the insured can sufficiently do or follow to earn or obtain any wages, compensation, or profit."

*Judgment reversed. Jenkins, P. J., concurs. Stephens, J., disqualified.*