MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION
v. BIRD.

Opinion delivered March 21, 1932.

*Malcolm W. Gannaway,* for appellant.

*W. A. Bates, Sam T. Poe, Tom Poe* and *Donald Poe,* for appellee.

MEHAFFY, J. This suit was originally filed by appellee against appellant for $175 with interest, penalty and attorney's fees.

Appellee filed an amendment to his complaint in which he asked judgment for $2,675 together with 12 per cent. penalty and $400 attorney's fees. He alleged that the appellant, in consideration of the payment to it by the

appellee, of an annual premium of $40, delivered to appellee its policy of accident insurance, attaching a copy of the policy to his complaint. He further alleged that on January 5, while said policy was in full force and effect, appellee was accidentally injured in an automobile accident, wherein two cars ran together, thereby inflicting injuries to his head, hips, back, chest and forehead, and breaking and crushing ribs, and causing internal injuries, which have totally and permanently injured him; that as a result of the injuries he has been totally and permanently injured from January 5, 1931, and will continue so.

He further alleged a performance of all the conditions of said policy on his part, and that he gave appellant due notice and proof of his injuries, and made demand for payment, which appellant refused to pay, and asked judgment against the appellant for the amount alleged to be due under the policy.

Appellant filed answer in which it denied all the material allegations in the complaint, and alleged that at the time of the accident there was no policy of accident insurance in force.

One of the clauses in the policy reads as follows: "If such injuries as described in the insuring clause shall wholly and continuously disable the insured for one day or more, and so long as the insured lives and suffers said total loss of time, the association will pay a monthly indemnity at the rate of eighty ($80) dollars."

The appellee testified that he was 58 years old, and that his occupation was and had been for some time, that of running and working in a filling station at Waldron; prior to that time he had been a blacksmith; that his policy was issued to him in 1924, and was in force at the time of his accident and injury. All premiums had been paid since the policy was delivered to him. He paid $12 when the policy was delivered, and $10 every quarter thereafter; early in 1931 he was injured in an automobile accident at Waldron; that he was confined to his home on account of the injuries sustained for about six

weeks, and was treated by Dr. Duncan; that since the accident he had been unable to fix or repair heavy casings or tires, or to grease cars; that before the accident he could do this work; when he lifts anything heavy or pulls with his right arm it hurts his side; two or three ribs and his breast bone were broken on the right side; he spit up blood for a week, and does not sleep or lie on his right side, as he could before the injury.

Some of the ribs were caved in, and this was shown to the jury. A copy of the policy was introduced in evidence. Dr. Duncan had treated him since January 26, 1931.

Mr. Harris and a boy named Chandler, appellee and his son worked at the filling station; appellee's son was the proprietor; Mr. Harris does the heavy work. Immediately after the injury he told his son to notify the company.

Mack Bird, son of appellee, testified that he was the cashier of the bank of Waldron and had been paying his father's premiums for seven or eight years; that on December 30, 1930, he mailed a check for $10 to appellant; the check was mailed in a long envelope, with the Bank of Waldron printed thereon; that it was addressed to the appellant at Omaha, Nebraska. It was drawn on the bank at which witness worked, and had been paid and canceled. His father was injured on January 5.

He testified that in September or October, 1930, he paid the premium to appellant's collector at Waldron; he sent a letter to the company with the check on December 30, 1930. He did not have a copy of the letter. He testified that he did not mail the check in the envelope attached as an exhibit to the deposition of Grace Welch, but that he mailed a notice of the accident in an envelope similar to the one attached to her deposition. He mailed the notice of the accident the day after his father was injured.

The check sent on December 30, to Little Rock, was deposited in Omaha, Nebraska, and paid by the Bank of

Waldron, and did not show that it ever went to any bank in Little Rock.

T. R. Harrison testified that he sold policies and collected premiums for appellant, and that sometimes he would remit to appellant by his own check or by a cashier's check, charging 10 per cent. Appellant would send witness a list of policyholders in Waldron twelve or fifteen days before premiums were due; that he collected $10 every quarter from appellee on the policy sued on; that he wrote the policy, and that the application was dated January 29, 1924. He said if the premium due January 1, 1931, was not paid until January 5, 6 or 8, the policy had lapsed.

Dr. Duncan was introduced and testified as to appellant's injuries, and also introduced a statement made to the company. Dr. Bevil also testified about the injuries to appellee.

Grace Welch, a witness for the appellant, testified that she was mail clerk for the appellant in its home office in Omaha, Nebraska, and had been for six years; that all premiums which were paid direct to said office by mail were brought to her; that she received a premium on January 8, 1931, in the amount of $10 from appellee. She introduced an envelope in which she said the check came, and she testified also that a reinstatement blank came in the same envelope; that the reinstatement blank showed premium paid on January 6, 1931. She testified that there was no other policy issued to appellee, and that appellee's policy had lapsed on October 1, 1930, for nonpayment of premium due on that date, and that it was not reinstated until January 8, 1931.

The deposition of C. E. Forbes, witness for appellant, was introduced and in said deposition he testified that the policy had lapsed. He also introduced a letter in which he said that appellee had been notified that his policy had lapsed. This witness also testified that the appellee had no other policy of insurance with appellant.

The deposition of Thelma Webber was introduced. She testified that she was a stenographer and bookkeeper

for appellant in the office at Little Rock, Arkansas, and received all checks and remittances from policyholders which were sent to the Little Rock office; that the Little Rock office received a premium on July 4, 1930, and that no other premium was received until April 1, 1931; that the records at Little Rock showed that the policy was in force until October 1, 1930, and that it was reinstated on January 6, 1931. She had a card showing appellee's payments, and this card constituted all the records in her office with reference thereto. There was no correspondence between the Little Rock office and the Omaha office with reference to appellee's claim. The only record she had in her office showing remittances of appellee on his policy, was that contained on the card which she exhibited, and it was attached to her deposition.

She also testified that T. R. Harrison was appellant's collector and furnished by the home office with a list of policyholders whose premiums were due, and that Harrison, after collecting, would remit to the Little Rock office; that the home office sent out notice of premiums due, and that her office notified policyholders of the lapsing of their policies; she did not remember whether she had sent a lapse notice to appellee or not. Her records did not show how the premium was paid on January 6.

Alva Hall testified that he lived in Waldron, was connected with the Chevrolet Company who sold Chevrolets, and waited on the public in servicing, selling, greasing and oiling cars, and running a general garage and repair business; that about two hours before he testified, Mr. Gannaway brought a Cadillac or Packard car, and witness took the right front tire therefrom and weighed it; that it weighed 54 pounds.

Numerous instructions were given by the court, and there was a verdict and judgment for appellee in the sum of $2,675, 12 per cent penalty, and attorney's fees. This appeal is prosecuted to reverse said judgment.

Appellant states that it defends the suit on two grounds: first, that the policy sued on had lapsed, and

was not in force on January 5, 1931, the date of the injury; and second, that the appellee was not totally and permanently injured.

It was contended by the appellant that the policy lapsed on October 1, 1930, because of nonpayment of dues, but the appellant concedes that the finding of the jury against appellant on this point is conclusive. There is therefore no necessity to call attention to or discuss the evidence on this question.

Appellant however contends that the premium due January 1, was not paid until January 8, and that the policy lapsed because of the failure to pay the premium due January 1, 1931, and was therefore not in force on January 5, at the time of appellee's injury.

Mack Bird, a witness for appellee, testified that he had been sending the premiums for his father for seven or eight years, and that on December 30, 1930, he sent a check to the company for $10; that the check was mailed on the night of December 30, in a long envelope of the Bank of Waldron, and that he wrote a letter.

The check dated December 30, was introduced in evidence and showed that it was deposited in the bank at Omaha, on January 8. The witness testified that he mailed it to the office at Little Rock. Witnesses for appellant testify that the check for the January premium was not received until after the injury.

C. E. Forbes, assistant secretary of the company at Omaha, Nebraska, testifies that the policy was reinstated on January 6. Of course, it could not have been reinstated if appellant's theory is correct, until the check and reinstatement application was received.

Grace Welch, the mail clerk at the home office in Omaha, Nebraska, testified that all premiums that came to that office by mail were brought to her desk, opened, and a record made of them, and that she received the premium on January 8, 1931.

The evidence of the appellee shows that on the 6th, the day after the injury, a notice of the injury was sent, and Grace Welch introduced an envelope in which she

says was inclosed the check for the premium and the reinstatement application, but which the appellee's witnesses say was the envelope in which the notice of the injury was sent.

The two witnesses for appellant disagree as to the time when the premium was received, and their testimony is in conflict with the testimony of the appellee that the premium was paid on December 30, 1930. It is undisputed however that the check was dated December 30, 1930, and it is also undisputed that notice of the injury was mailed to the office at Omaha.

The evidence being in conflict as to whether the premium was paid or whether the policy had lapsed, this was a question of fact for the jury, and at the request of the appellant the court gave the following instruction: "If you find from the evidence that premiums on the policy sued on did. not reach the defendant's office in Omaha, Nebraska, or its Little Rock office, on or before noon of the first of January, 1931, that the policy lapsed at that time, and the plaintiff cannot recover for his alleged injuries, unless he has shown by a preponderance of the evidence that said premium was so received before plaintiff's alleged injury of January 5, 1931."

The question therefore whether the policy was lapsed was submitted to the jury under an instruction requested by the appellant, and the jury's finding on this question is conclusive. There was substantial evidence to support the verdict. The jury are the judges of the weight of the evidence and the credibility of the witnesses.

The next question, and the most difficult one, is whether the appellee was wholly and continuously disabled. The undisputed evidence is that appellee was 58 years old; that, before he went to work for his son in the filling station, he was a blacksmith; and the undisputed evidence also shows that, while he did some light work at the filling station for his son, he did not receive any salary or wages, and he testifies that he was unable to do any heavy work; that his ribs and breast bone

were broken, and that it caused him pain and suffering to attempt to do any lifting or any heavy work.

Dr. Duncan testified that appellee had two broken ribs, and there might have been more than two; that he was nervous, and also testified that the breast bone was fractured; that he spit blood for a time, and Dr. Bevil testified that he found the sixth rib had been fractured and was bent down, and made a kind of depression, and it was pointed out by Dr. Bevil to the jury where and how appellee was injured. He testified at length as to appellee's condition, and that the injuries were permanent, and it seemed very reasonable that as a result of the injuries he was incapacitated from doing his work in any way. He also testified that appellee would never get any better.

The evidence showed that his rib was bent, his breast bone broken; that these injuries would cause him pain and suffering, and would disable him from performing the work that he had theretofore done. Of course, he is not entirely helpless, and after his injury endeavored to do some work, but his condition was such that he could not do the heavy work without constant pain.

Total disability does not mean that he is unable to do anything.

The general rule and that adopted by this court is stated in Kerr on Insurance, p. 385, as follows:

"Total disability must, from the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged. One who labors with his hand might be so disabled by a severe injury to one hand as not to be able to labor at all at his usual occupation, whereas a merchant or prefessional man might, by the same injury, be only disabled from prosecuting some kinds of business pertaining to his occupation. Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists although the insured is able to perform a few occasional acts, if he is

unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labors so long as was reasonably necessary to effect a speedy cure."

A careful reading of the evidence in this case shows that appellee's injuries were of such a character and degree as to wholly disable him from doing all the substantial and material acts necessary to be done in the prosecution of his business, and that common care and prudence would require a man in his condition to desist from the kind of labor he had performed prior to his injury.

This court, in a decision of the *Mo. State Life Ins. Co.* v. *Snow, ante* p. 335, quoted with approval the rule above set out, stating that it had been followed many times since by this court, and stated: "Of course, such a provision in a policy does not require that the insured shall be absolutely helpless or insane, but there must be such disability as renders him unable to perform all the substantial and material acts in the prosecution of a gainful occupation."

The clause as to total disability in the case last referred to stated that the disability must be such as to prevent the insured then and at all times thereafter from engaging in any gainful occupation.

The disability clause in the policy here involved states that he shall be wholly and continuously disabled, or for so long as he suffers said total loss of time.

Appellant calls attention and quotes from *Aetna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 336. The court said in that case: "Appellant's contention for reversal of the judgment is that the undisputed evidence showed appellee had not become wholly, continuously and permanently disabled. We think there is substantial testimony in the record tending to show that appellee was

totally and permanently disabled, according to Mr. Kerr's definition of total disability when used in indemnity insurance policies.''

The rule announced in Kerr on Insurance is quoted with approval in that case. *Industrial Mut. Ind. Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029.

Appellant next quotes from *Smith* v. *Supreme Lodge of Order of Select Friends,* 62 Kan. 75, 61 Pac. 416, and that court said, among other things: ''Whether an injury constitutes a total disability is ordinarily a question for the jury,'' but the court also stated in that particular case from the facts alleged and the well known requirements of plaintiff's occupation, it is clear that he is not totally and permanently disabled from carrying it on.

In the above case the insured was a pharmacist, and suffered an accidental gun-shot wound in the left arm, and it became necessary to amputate the arm at the shoulder joint. The policy in that case provided, among other things, that the loss of one hand and permanent crippling of the other would constitute total and permanent disability. The insured suffered the loss of one hand, but there was no injury to the other hand. His right hand was uninjured, and the court said to hold that that was a total disability under the policy would be to alter the contract.

The next case relied on by appellant is *Lobdill* v. *Laboring Men's Mutual Aid Association,* 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542. The court in that case said that the cases which have placed a construction upon the term ''total disability'' might seem to be divided in two classes, *viz*: those which construe it liberally in favor of the insured, and those which construe it strictly against him. The court also said in that case, in speaking of the acts that the insured performed, that the frequency and nature of acts would be for the consideration of the jury in determining whether he was totally disabled, and that the evidence in the particular case justified the jury in finding that he

was, for the full 17 weeks, wholly disabled within the meaning of the policy.

The next case relied on by appellant is *Metropolitan Life Ins. Co. v. Blue,* 222 Ala. 665, 133 So. 707. In that case the court said: "We have had occasion to consider total disability or total disablement in accident policies." In *U. S. Casualty Co. v. Perryman,* 203 Ala. 212, 82 So. 462, there was a sprain of the knee joint. "The insured did not at the time think it serious, and proceeded in good faith to do his usual work in part, but, becoming worse, he did become wholly disabled for a time, and it appeared that, with due regard to his own care, he should not have worked from the beginning. We held such evidence would support a finding of total disability from the beginning, and that entering upon his work, although it may have aggravated the trouble, being in good faith, worked no estoppel against him."

The court, in the same case, also said: "Total disability may exist, though it is physically possible for insured to perform occasional acts as part of his employment or business."

In the instant case, the appellee did not think at first that he was totally and permanently disabled, and he undertook to do some work, but this would not work an estoppel or disentitle him to recover if the evidence was sufficient to justify the jury in finding that he was totally disabled.

The next case relied on is *Marchant v. N. Y. Life Ins. Co.,* 42 Ga. App. 11, 155 S. E. 221. The court in that case said: "The fact that the plaintiff attempted for a season to carry on this line of employment before ascertaining his disability to do so, and refraining from such employment, should not prevent a recovery for benefits thereafter accruing under provisions of the policies; and this is true even though such employment had been his only occupation."

The next case relied on is *Bachman v. Travelers' Ins. Co.,* 78 N. H. 100, 97 Atl. 223. In that case the court, after calling attention to the evidence, said: "With this

evidence in the case, it was a question of fact whether the plaintiff did or did not have substantial and valuable earning capacity during that time."

Total disability does not mean absolute helplessness. If construed in that sense, the policy would be worthless; it would not mean anything. A man might be totally disabled in the sense that this term is used in insurance policies, although he was able to go about, go to places of business, and perform light work occasionally. He might be able to do these things and still be totally disabled in the sense that he could not wait on the trade in such a manner as to retain it, and, if one is so disabled that he cannot perform the substantial and material acts in the prosecution of his occupation, he is totally disabled.

Appellant calls attention to the following Arkansas cases which discuss the question here involved and adopt the rule above set out: *Ætna Life Ins. Co. v. Phifer,* 160 Ark. 103, 254 S. W. 335; *Industrial Mutual Ind. Co. v. Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S) 635, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Enginemen v. Aday,* 97 Ark. 425, 134 S. W. 928, 34 L. R. A. (N. S:) 126; *Great Eastern Casualty Co. v. Robins,* 111 Ark. 607, 164 S. W. 750; *American Life & Acc. Assn. v. Walton,* 133 Ark. 348, 202 S. W. 20; *Ætna Life Ins. Co. v. Spencer,* 182 Ark. 496, 32 S. W. 310.

In the last case the court said: "His business was such that he could not profitably conduct it by merely supervising it and hiring others to perform the work. * * * His loss in this respect was the very object in taking out the insurance. Hence, when the character of the business, together with the attendant circumstances, is considered, we are of the opinion that reasonable minds might reach the conclusion that the insured was totally and permanently disabled within the meaning of the policy as above defined, and that the jury was warranted in finding a verdict in his favor."

In this case there was substantial evidence tending to show that appellee could not perform the work without great pain and suffering, and some of the work he could

not do at all, and we think the evidence was such as to make it a question of fact for the jury, and the jury's finding is conclusive here.

At the request of the appellee, the court gave an instruction, which was not objected to, defining total disability, and, under the instructions not objected to, the jury found for the appellee.

We find no error, and the judgment is affirmed.