DAVID J. ROSEBERRY, Respondent, v. AMERI-
CAN BENEVOLENT ASSN., Appellant.

St. Louis Court of Appeals, October 2, 1909.

1. **ACCIDENT INSURANCE: Policy Condition Requiring Notice
of Injury: Effect of Failure to Give Notice.** Compliance with
a provision of an accident insurance policy which requires in-
sured to deliver notice in writing to the company of any disa-
bility, within ten days after the beginning of such disability, is
a condition precedent to the right of insured to recover for such
disability.

2. **CONTRACTS: Duty Created by Law: Excuse for Failure to
Perform.** When the law creates a duty and the party is disabled
to perform it, without any default in him, and he has no remedy
over, the law will excuse him. But when the party by his own
contract, creates a charge or duty upon himself, he is bound to
make it good, if he may, notwithstanding any accident by in-
evitable necessity, because he might have provided against it by
his contract.

3. ————: **Rules for Construction.** The cardinal rule for the in-
terpretation of contracts is that the intention of the parties
shall be effectuated.

4. **INSURANCE: Contracts: Rules for Construction.** Insurance
contracts are to be construed liberally in favor of the insurance
and against the insurer.

5. ————: ————: ————: **Forfeitures Not Favored.** In order
to work a forfeiture under an insurance contract, it must
clearly appear that the matter was within the contemplation of
the parties at the time the contract was entered into, and if the
question be doubtful, the doubt must be resolved against the in-
surer, and in favor of effectuating the indemnity.

6. **ACCIDENT INSURANCE: Failure to Give Notice of Injury:
Sufficient Excuse For.** Where insured under an accident policy
was, by reason of his injuries and of the administration of
opiates in the treatment thereof, rendered unconscious for a
period of three weeks, he was excused from complying with a
condition of the policy requiring written notice of injuries to be
given within ten days; and a notice given within a reasonable
time after insured became conscious was sufficient, especially
in view of the fact that the policy did not include a stipulation
requiring compliance therewith as to notice under such circum-
stances.

7. ————: **Wrong Classification of Insured: Burden of Proof on Insurer to Establish.** If, under an accident policy, a certain occupation was classed in the manual of defendant association as hazardous, rendering a higher rate of premium necessary, or affording a lesser amount of indemnity with the same premium than that pertaining to the ordinary occupation of insured, it was a matter within the knowledge of insurer, and the burden rested on it in an action on the policy to establish the same.

8. ————: ————: **Provisions Providing for Forfeiture Strictly Construed.** The conditions of an insurance policy, providing for the forfeiture of indemnity if insured engage in an occupation or act other than that mentioned in the policy, are strictly construed against the insurer.

9. ————: ————. That defendant insurance company had classified in its manual laborers engaged about an oilcloth and linoleum factory, and also laborers about oil wells, under an extra hazard, did not amount to such classification of labor in handling gasoline, there being no specification as to the handling of gasoline.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*O. D. Jones* and *E. S. Puller* for appellant.

(1) The court erred in overruling defendant's motion for judgment on the pleadings. The petition avers the plaintiff gave notice—the reply admits he did not give it according to the terms of the policy and states no facts that are an excuse for not doing it in law. The one stated to be an excuse in law would have to be provided for in the contract. Where a party by contract agrees to do a prescribed thing in a prescribed time, he is liable for non-performance of the contract notwithstanding the fact that his non-fulfillment of the contract was occasioned by inevitable and unavoidable accident. This is an ancient rule of the law and was thus laid down more than two hundred years ago, in the case of Pardine v. Jane Aleyn, p. 26, 8 T. R. 267; Harrison v. Railroad, 74 Mo. 364; Bishop on Con-

tracts (enlarged edition), sec. 590; Shelby v. Railroad, 77 Mo. App. 205; Davis v. Smith, 15 Mo. 325; Cochran v. Railroad, 131 Mo. 607; McCullough v. Ins. Co., 113 Mo. 606; Clarton v. Traveler's Assn., 101 Mo. App. 312. (2) The petition averred the plaintiff gave notice of the accident, but did not state the time of it. The answer sets out the clause requiring it to be done in ten days and the reply admits it as pleaded and says the notice was "accepted" and the defense "waived." The cause of action must be stated in the petition. The objection to the introduction of any evidence on the trial ought to have been sustained. (3) There was not offered any evidence of "waiver" of the condition precedent giving ten days' notice. The burden is on him who claims waiver to prove that it was made, if at all, with a full knowledge of all the facts. And without such knowledge there is no waiver. Lee v. Hassett, 39 Mo. App. 67. It was a question of law, whether the letter was a waiver or any evidence of it. (4) It as error to not exclude the testimony of plaintiff and Dr. Luman and Dr. Jurgens as to his being out of his mind. It constituted no evidence of waiver or excuse for not giving the notice in ten days. (5) It was error to overrule defendant's demurrer to plaintiff's evidence at its close in chief. He had made no case to submit to the jury—he had shown no excuse in law for the failure to give notice in ten days. His evidence showed he had no cause to submit to the jury and defendant's instructions Nos. 1, 2, 3 and 4 asked after the close of all the evidence should have been given. (6) It was error to give the plaintiff's instruction No. 2. It submitted that if the plaintiff was for ten days unable to give the notice, it is a defense; also directs the jury to find a verdict for $25 or $35. His No. 3 is erroneous because it submits the case to the jury. His No. 4 is erroneous because it submits a fact to the jury the plaintiff admits, and the question of law, whether handling gasoline was

a more hazardous occupation than that of night pump-
man. The facts were all admitted—all left was for the
court to tell the jury as a matter of law the plaintiff
could only recover $25 per month if anything. It was
also erroneous, in telling the jury that the burden was
on the defendant to show that the occupation of hand-
ling gasoline was more hazardous than that of night
pumpman. The letter shows as a matter of law it con-
tains no waiver. (7) The court erred in refusing defend-
ant's instructions 1, 2, 3. They state the law less favora-
bly to defendant than it is. The fourth asked and refus-
ed is plainly law as we have pointed out, as also the fifth
and sixth. We do not think the court can read the
cross-examination of defendant and not be impressed
with the fact the plaintiff did not tell all the truth
of the manner of the accident. The judgment ought to
be reversed without remanding.

*F. H. McCullough* and *C. R. Fowler* for respondent.

The appellant complains that the court erred in
giving all the above instructions; such contention
is not tenable in the light of the following authorities,
viz: Lovelace v. Insurance Co., 126 Mo. 104; Hester
v. Fidelity Co., 69 Mo. App. 186; Hoffman v. Indem-
nity Co., 56 Mo. App. 301; Columbia Co. v. Fidelity
Co., 104 Mo. App. 147; Hayes v. Casualty Co., 98 Mo.
App. 410; Hough v. Surety Co., 90 Mo. App. 481; Bur-
gess v. Insurance Co., 114 Mo. App. 186. The defend-
ant complains that the court erred in refusing seven
instructions offered by defendant. A careful reading
of these refused instructions will disclose the fact, that
if the instructions of the court given on behalf of plain-
tiff properly state the law, then the court was right
in refusing all of the said seven instructions. The giv-
ing of instruction No. 1, on behalf of plaintiff, is en-
tirely warranted by the holding of the court in Love-
lace v. Insurance Co., 126 Mo. 104; Hester v. Fidelity

& C. Co., 69 Mo. App. 186. Plaintiff's instruction No. 2 submits the issue to the jury, that if they find plaintiff was injured in a gasoline explosion on or about June 10, 1905, and that on account of the happening of said injury to plaintiff, he lost his right mind, and the injury to him and the circumstances of such injury were such as to render it impossible for plaintiff to give or cause to be given to the defendant, said notice within ten days after the happening of said injury, then they should find for the plaintiff. Said instruction No. 2 is proper and the following authorities amply sustained the contention of the plaintiff, viz: Hoffman v. Indemnity Co., 56 Mo. App. 301; Columbia Co. v. Fidelity Co., 104 Mo. App. 165; Hayes v. Casualty Co., 98 Mo. App. 415.

NORTONI, J.—This is a suit on an accident insurance policy. Plaintiff recovered and defendant appeals. It appears plaintiff was insured in the defendant company for the period of one year in consideration of one dollar per week premium paid by him. Plaintiff was insured as a railroad pumpman and under the defendant's classification of risks relating to that vocation. The policy vouchsafed insurance at the rate of $35 per month during the period of total disability, provided the insured received bodily injuries solely through external, violent, accidental and involuntary means which should produce visible marks upon his body and independently of all other causes immediately, totally and continuously disable him from performing any kind of labor or business. It was further provided that in no case should the indemnity exceed twelve consecutive months.

Plaintiff was employed as a railroad pumpman at the time of his injuries. From this, we infer it was his duty to attend to the pumping of water into the railroad watertank for the purpose of replenishing the supply of locomotives. He performed the services at

night. Among other things, the railroad company maintained at the place of plaintiff's employment, a small gasoline engine. This engine was not used in connection with the pumping of water, but instead was maintained for the purpose of hauling cars of coal into the coal chute there situated. It seems the railroad maintained a coal chute at this point where its locomotive engines received coal. It was necessary, every few days, to replenish the supply of coal in the chutes, and to do this, cars laden therewith were placed therein and unloaded. When it was necessary to remove a car of coal from the side track into the coal chutes, plaintiff would operate the gasoline engine referred to for that purpose. His duties in respect of this engine may not have been parcel of the duties pertinent to a railroad pumpman generally speaking, nevertheless such duties were incidental to his employment in the present instance, and he was required by the railroad company to perform them. While engaged in carrying a bucket of gasoline to replenish the gasoline engine, he spilled a considerable quantity of the fluid upon his trouser-legs. His trousers became saturated therewith from his knees to his ankles. The gasoline with which his trousers were thus saturated became ignited from the fire in his lantern, which was near. This resulted in burning his limbs from the ankles to about four inches above his knees so severely as to partially roast the flesh. The physicians testified that not only was the skin of his limbs destroyed, but the muscles were severely burned as well. The testimony tends to prove that as a result of the pain incident to the burn, plaintiff became unconscious. The attending physicians testified that he was immediately placed under the influence of opiates and so continued between two and three weeks. He was confined to his bed thereafter for more than eight months and rendered wholly unable to perform any kind of labor or service for more than fourteen months after the injury. In fact, his disability was total for

a period greater than the full term for which indemnity was provided in the policy. Although the policy required that in case of accidental injury, as above indicated, the insured should give defendant company written notice thereof within ten days thereafter, it appears no notice whatever was communicated to defendant in that behalf until nineteen days after the accident occurred. The stipulation in the policy touching this matter is to the effect, by its acceptance, plaintiff agreed "that notice in writing on blanks furnished by the association with full particulars of any disability or death for which claim is to be made, must be delivered to the association at St. Louis, Missouri, within ten days after the beginning of said disability in order to entitle the member to indemnity." This provision of the policy is invoked by the defendant and it is urged that plaintiff is precluded thereby from any recovery on the claim asserted for the reason the notice referred to was not given until nineteen days after the date of the injury. To excuse himself in respect of this matter, plaintiff himself testified that he was in an unconscious state of mind from the time of his injury for nearly three weeks thereafter. This condition of mind was induced by reason of the severity of his burns and the opiates administered by the physicians in order to allay his sufferings. The two physicians who attended him gave testimony to the same effect. It appears notice was given to the company forthwith after the plaintiff's mind was relieved from the influence of the opiates. It is argued on the part of defendant that these facts are not sufficient to relieve the plaintiff of the duty imposed upon him by the contract of insurance. It is said that where a person voluntarily assumes an obligation by contract, he is bound to perform it or suffer the consequences notwithstanding that accident or necessity enforced his failure to perform, and that this is true for the reason he might have provided against such by contract. There can be no

doubt that the condition of the policy above quoted requiring notice to the company within ten days after the injury, is a condition precedent to the right of the plaintiff to recover; and as a rule, failure to perform such condition within the time and manner specified, invalidates a claim to indemnity. [McFarland v. U. S. Accident Assn., 124 Mo. 204; Ins. Co. v. Kyle, 11 Mo. 278, 289; McCullough v. Ins. Co., 113 Mo. 606; 2 Bacon on Benefit Societies (3 Ed.), sec. 505.] It must be conceded that the doctrine urged by defendant obtains in our law. The question in respect of duties assumed by a party through his contract, which is neither immoral nor against public policy, was determined at an early date in the case of Paradine v. Jane Aleyn's Rep. of Cases before the King's Bench, 27. It is said in that case: "When the law creates a duty and the party is disabled to perform it, without any default in him, and he has no remedy over, the law will excuse him. But when the party, by his own contract, creates a charge or duty upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." The rule obtains with equal force in our law and has been frequently quoted and affirmed. See Whittemore v. Sills, 76 Mo. App. 248, 251; Davis v. Smith, 13 Mo. 467; Harrison v. Railroad, 74 Mo. 364, 371. However this may be, in respect of insurance contracts, the courts have modified the severity of the doctrine referred to by appropriate application of other pertinent principles which obtain with more or less influence in aid of effectuating the indemnity vouchsafed therein. The fundamental idea in insurance is that of indemnity. It is the prospect and hope of indemnity in the case of peril and loss which induces the insured to part with his means and enter into the contract on the one hand, and it is the offer and sale of indemnity against loss which renders to the insurer the means to support his business and accumulate profits. The

cardinal rule for the interpretation of contracts being that the intention of the parties shall be effectuated, the courts have evolved a system of principles from the elements of natural justice which inhere in the common law, peculiar to insurance contracts, to the end of aiding the idea of indemnity vouchsafed therein. Among others, it is the rule that insurance contracts shall be construed liberally in favor of the insurance and against the insured. This doctrine obtains, too, with peculiar force in respect of conditions contained in such contracts which operate thereon subsequent to the fact of loss thereunder. In other words, the rule enjoins that such interpretation of the contract shall be given as will effectuate and not destroy the indemnity, unless the express words contained therein evince that the parties clearly contemplated to the contrary. [Lewine v. Sup. Lodge K. of P., 122 Mo. App. 547; McFarland v. Accident Assn., 124 Mo. 204, 216; McNally v. Ins. Co., 137 N. Y. 389; Woodmen Accident Assn. v. Pratt & Byers, 62 Neb. 673.] And then, too, a rule of universal application obtains here. It is a principle always pertinent where forfeitures are sought. Here the principal features of the contract have been fully executed. All of the premiums have been paid, the loss has accrued, and a forfeiture of the plaintiff's right is sought because of his failure to perform a condition of the policy operating thereon after the fact of loss. Forfeitures are not favored in the law. Therefore, in order to work a forfeiture under a contract, it must clearly appear that the matter was within the contemplation of the parties at the time the contract was entered into and if the question be doubtful, the doubt must be resolved against the insurer and in favor of effectuating the indemnity vouchsafed by the policy. [Lewine v. Sup. Lodge, K. of P., 122 Mo. App. 547, 560; McFarland v. U. S. Accident Assn., 124 Mo. 204, 217.] The principle obtains alike in another form in respect of forfeitures sought under statutes and by-

laws. [Albers v. Merchants Exch., 140 Mo. App. 446, 120 S. W. 139.] Now it must be conceded that by a literal interpretation of the words of the policy requiring notice to be given within ten days after the accident, no exception whatever appears therein touching a case where the accidental injury wholly incapacitated the insured to perform the condition. It must be conceded as well that no express words therein require that such notice shall be given to the insurer even though the happening of the very contingency insured against renders notice impossible, unless the general words suffice to that end. In such circumstances, we believe that by attending to the principle which directs forfeitures shall not be adjudged except in cases obviously intended or clearly within the terms of the contract, and to the principle directing the court to such an interpretation as will effectuate the purpose of awarding the indemnity rather than to destroy it, the case should be treated as one not contemplated by the parties upon entering into the contract. In other words, it not appearing to have been expressly provided for therein, we are of the opinion that the language used requiring notice within ten days, did not, as a matter of law, include a stipulation requiring compliance therewith as to notice under the circumstances presented, and that notice given within a reasonable time after plaintiff became conscience, will be sufficient. There are numerous well-considered authorities in support of this conclusion. See Comstock v. Fraternal Accident Assn., 116 Wis. 382; Woodmen Acct. Assn. v. Pratt & Byers, 62 Neb. 673; Ins. Companies v. Boykin, 12 Wall. 433, 79 U. S. 433; Hayes v. Continental Casualty Co., 98 Mo. App. 410; 2 Bacon, Benefit Societies (3 Ed.), sec. 504. It is very true there are high and respectable authorities to the contrary. These cases proceed in affirmance of the doctrine that if a party assumes an obligation by contract, he should be held to

discharge it, notwithstanding circumstances which render it impossible, for the reason he should have provided for such contingency. A notable authority supporting this doctrine is that of Gamble v. Accident Ins. Co., 4 Ir. R. L. C. 204. In that case, the stipulation requiring such notice was a condition precedent and the omission to give notice of death within the time, even when the death was instantly caused by the accident, was held to be a complete defense. It was said that although the insured, because of his death, could not give notice, it might have been given by any person interested in the policy. See also Patton v. Employers' Liability Assn., 20 L. Rep. (Ir.) 93; Martin v. Equitable Accident Assn., 41 N. Y. St. Rep. 77; 16 N. Y. Supp. 279; 2 Bacon, Benefit Societies (3 Ed.), sec. 405. But, as said by Mr. Bacon (sec. 505), this is regarded as too strict an application of the rule. Indeed, it is so harsh in its application as to operate a complete destruction of the indemnity vouchsafed in the policy by the occurrence of the very event against which the insurer agrees to indemnify. The policy of the law is to maintain contracts and enforce the rights of parties thereunder when this can be done without offending the ascertained intention of the contracting parties or some legal principle. Therefore, in accord with the principles above discussed, it was held by the Supreme Court of Nebraska where the accident resulted in concussion of the brain, causing mental derangement, that during the time of such derangement the duty of giving notice enjoined upon the insured by the policy was excused. [Woodmen Accident Assn. v. Pratt & Byers, 62 Neb. 672, 87 N. W. 546, 55 L. R. A. 291.] To the same effect, see Comstock v. Fraternal Accident Assn., 116 Wis. 382, 93 N. W. 22; Hayes v. Continental Ins. Co., 98 Mo. App. 410, 72 S. W. 135; 2 Bacon on Benefit Societies (3 Ed.), 505. And so, too, the Supreme Court of the United States said, in a fire insurance case, that insanity of the insured would operate to excuse him

from giving notice of the loss which the policy enjoined. [Insurance Companies v. Boykin, 12 Wall. 443, 79 U. S. 443.] We believe, too, the principle affirmed by our Supreme Court in McFarland v. U. S. Accident Assn., 124 Mo. 204, is an analogous authority for the conclusion reached in respect of the matter now in judgment.

It appears plaintiff was mentally incapacitated as a result of the accident and the effect of the opiates administered because of the same, for nearly three weeks thereafter, and we believe these facts to be sufficient in law to excuse him from performance of the condition requiring notice during such period, and that it was sufficient to communicate the same, as he did, immediately after the disability was removed. We believe, too, the judgment of the court should be placed upon the grounds that there are no express words in the policy requiring notice in a case circumstanced as this one is, and that therefore, in aid of the insurance and to the end of avoiding a forfeiture, it should be adjudged that it does not appear from the general words employed the circumstances presented were within the contemplation of the parties at the time the contract was entered into, for the reason such general words do not, as a matter of law, include the circumstances of the case. On this score, we are impressed with the reasoning of the court in Comstock v. Fraternal Assn., 116 Wis. 382.

As stated before, plaintiff was insured as a railroad pumpman, at the rate of thirty-five dollars per month for total disability. For this insurance he paid a premium of one dollar per week. His injuries having been received while engaged in handling a bucket of gasoline for the purpose of supplying the tank of the gasoline engine, it is argued that he is entitled to recover only twenty-five dollars per month therefor. This argument predicates upon the assertion that the act of handling or working with gasoline is classed by the company as more hazardous than the occupation of rail-

road pumpman. That is, that the hazard incident to such occupation or act is classed in the manual of the company as EE, and that the rate of premium, one dollar a week, paid by plaintiff under the provisions of the policy, entitled him to indemnity at the rate of twenty-five dollars per month only if injured while engaged in such an occupation or temporary act. The provision of the policy touching the matter is as follows:

"Sixth: Should the member holding this policy be disabled fatally or otherwise while engaged in any occupation or act temporarily or otherwise or in the performance of any act pertaining to any occupation or hazard classed in the manual of this association as more hazardous than the one under which this policy is issued indemnity shall be paid in such sums as the dues paid per month as set forth above would purchase in said lower occupation or hazard."

The question as to whether or not plaintiff was injured while engaged in the performance of any act pertaining to an occupation of hazard, classed in the manual of the association as more hazardous than that of railroad pumpman, was submitted to the jury under instructions. The jury found the issue on this score in favor of the plaintiff and awarded him an indemnity of thirty-five dollars per month. It is argued here that there was error in the instruction by which this matter was submitted. In the view we take of the case, we believe the criticism levelled against this instruction to be wholly unimportant, for it appears there was a total failure of proof in respect to the matter. Now if the occupation or even the temporary act of handling gasoline was classed in the manual of the association as more hazardous and should render a higher rate of premium, or afford a lesser amount of indemnity for the same premium, than that pertaining to the occupation of railroad pumpman, it was a matter peculiarly within the knowledge of the defendant and the burden

rested with it to establish the same by proof. [Frame v. Sovereign Camp, etc., 67 Mo. App. 127; 2 Bacon, Benefit Societies (3 Ed.), sec. 469.] Defendant assumed this burden and introduced its manual in evidence for the purpose of showing that one engaged in the occupation or in the temporary act of handling gasoline was classed by the association as more hazardous than the occupation of railroad pumpman; that is to say, that one engaged either in the occupation or temporarily in the act of handling gasoline was classed under the hazard of EE. It is very true the evidence shows hazards so classed are insurable at the rate of twenty-five dollars per month for a premium of one dollar per week. But it does not appear therefrom that defendant had any classification whatever pertaining to one engaged in the occupation or act of handling gasoline. From the manual introduced in evidence, it appears that a laborer in an oil cloth and linoleum factory is classed as EE. It appears therefrom also that a laborer engaged about an oil well is classed under the hazard of EE. There is nothing whatever contained in the manual in evidence tending to show the classification of a laborer or other person for that matter, engaged in the occupation or temporary act of handling gasoline. The conditions of an insurance policy which provide for the forfeiture of all or a portion of the indemnity, if the insured engage in an occupation or act other than that mentioned in the policy, are strictly construed against the insurer and in favor of the insured or beneficiary. [2 Bacon, Benefit Societies, sec. 325.] The rule is adhered to with strictness. In affirmance of the doctrine, the Supreme Court of Kentucky ruled in a case where the policy provided that if the insured engaged in keeping a saloon, his rights thereunder should be forfeited, that merely owning a one-half interest in a saloon should not be regarded as keeping a saloon under the terms of the policy. [Union Central Life Ins. Co. v. Hughes, 110 Ky. 26, 60 S. W. 850.] Of course,

this rule of strict construction obtains as well with respect to the defendant's manual, which is referred to by the policy as the standard by which the forfeiture is to be declared, as to the policy itself; that is to say, the court must construe the provisions of the manual in respect to the classifications of occupation and acts more hazardous, strictly against the insurer and not allow an intendment to defeat the indemnity. But even allowing all reasonable intendments, we are unable to perceive how proof that defendant had classified in its manual laborers engaged about an oil cloth and linoleum factory under the hazard, EE, and had classified therein laborers about oil wells under the same hazard, even tends to prove that a laborer engaged in the act of handling gasoline is so classified as well in its manual. There is not a word to be found in the manual relating to the classification of hazard incident to the occupation or act of handling gasoline. It therefore appears there was no proof whatever tending to support the defendant's theory that at the time of his injury plaintiff was engaged in the performance of an act pertaining to an occupation or hazard classed in the manual of the association as more hazardous than that of a railroad pumpman. The issue in respect of this matter should not have been submitted to the jury at all. The court should have instructed that if the jury found for the plaintiff, the measure of recovery should be at the rate of thirty-five dollars per month. Therefore the instruction, even though inaccurate, was not prejudicial.

The judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.