WILBURN FARMER, RESPONDENT, v. METROPOLITAN LIFE INSURANCE CO., APPELLANT.—85 S. W. (2d) 235.

St. Louis Court of Appeals. Opinion filed July 26, 1935.

Appellant's motion for rehearing overruled September 10, 1935.

*W. A. Brookshire* for respondent.

*Fordyce, White, Mayne & Williams, R, E. LaDriere* and *Edgar & Banta* for appellant.

*Leroy A. Lincoln* of counsel.

HOSTETTER, P. J.—This action was instituted on January 13, 1933, in the Circuit Court of St. Francois County, where, upon the application of defendant, a change of venue was granted to the Circuit Court of St. Louis County, Division No. One, where it was tried before the court and a jury on October 17, 1933.

The petition set out that defendant was a foreign corporation duly licensed to do business in Missouri; that for a long time prior to March 31, 1932, plaintiff was an employee of the St. Joseph Lead Company, a corporation, as a laborer at its mines at Herculaneum; that on or about October 1, 1919, defendant issued for a valuable consideration to the St. Joseph Lead Company, a policy of insurance styled group insurance 368-G, which was for the protection of the employees of said Lead Company; that on March 31, 1932, plaintiff was an employee of said Lead Company, and, under the terms of said policy was entitled to insurance and protection and that defendant through said Lead Company had issued to plaintiff a certificate of insurance styled Serial Certificate No. 10792, which stated that plaintiff was then insured in the sum of $1,250 and, in addition, Serial Certificates No. 10792A and No. 10792XA, each in the sum of $1,000, so that, on March 31, 1932, the various certificates aforesaid showed that plaintiff was entitled to insurance and protection in the sum of $3,250; that the said group insurance policy is in the possession of said Lead Company or defendant; that said group policy of insurance in amended section 7, contains the following provision:

"Total and Permanent Disability Benefits.—Upon receipt, at its Home Office, in the City of New York, of due proof that any employe, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will waive the payment of further premiums as to such employe and six months after receipt of such proof, will commence to pay, in lieu of the payment of insurance at his death, monthly installments as defined below to the said employe .. , . and will

continue such payments for the period provided below, should the insured continue totally and permanently disabled;"

that in the event plaintiff shall establish a claim for total and permanent disability benefits he will be entitled to eighty-one monthly installments of $44.62, based upon insurance in the sum of $3,250; that on the 31st day of March, 1932, and for a long time prior thereto he had been afflicted with chronic lead poisoning, diseased lungs, bronchitis, distended stomach and dizziness; that since said date he has been permanently, continuously and wholly prevented from performing any work for compensation or profit by reason of said bodily diseases and infirmities; that because of same he has been, since March 31, 1932, and will be, permanently, continuously and wholly prevented from performing any work for compensation or profit; that such ailments and conditions arose while the terms of said policy of insurance were in full force and effect and while he was an employee of said Lead Company and before he had attained the age of sixty years; that on the 31st day of March, 1932, all the premiums which had accrued and which were due upon each of said policies of insurance were duly paid; that plaintiff and said Lead Company have in all respects complied with the conditions and provisions contained in said policy; that he has made due proof of his disabilities to the defendant, in accord with the terms and conditions of said policy of insurance and that the defendant on September 23, 1932, refused to pay to plaintiff the installments as provided in said group policy, and, in fact, refused to pay to the plaintiff any amount under and by virtue of said policy of insurance; that there is now due and owing to plaintiff from defendant, eleven monthly installments in the sum of $44.62 each, or a total of $490.82; that plaintiff has made demand upon defendant to pay these installments but defendant has failed so to do and judgment is prayed for that amount.

Defendant's answer contained first, a general denial and a specific denial that plaintiff is totally and permanently disabled within the terms and meaning of policy No. 368-G sued on, and denied that plaintiff was so totally and permanently disabled at the time he left the employment of the Lead Company and at the time when the insurance under the provisions of said group policy was in force on the life of plaintiff; that if plaintiff is totally and permanently disabled so that he cannot engage in any occupation or perform any work for compensation or profit as provided by the terms of said group policy such total and permanent disability did not arise while plaintiff was in the employ of said Lead Company and while the policy sued on was in force and effect as to plaintiff, but that such total and permanent disability, if it exists, arose after plaintiff's employment with the Lead Company was terminated after the insurance as to plaintiff terminated; that defendant denied that prior to the filing of plain-

tiff's petition he made due proof to the home office of defendant, in accord with the terms and conditions of said policy, to the effect that he became totally and permanently disabled while in the employ of said Lead Company and while said insurance was in force and effect as to him, and denied that there was any such proof made to comply with the requirements, terms and provisions of said insurance policy No. 368-G.

The reply was a general denial.

The testimony showed that plaintiff for a number of years prior to April, 1932, had been an employee of the St. Joseph Lead Company at its plant at Herculaneum, Missouri, and, until March 31, 1932, was covered by $3,250 insurance, which was payable in the sum of $44.62 for each installment during total and permanent disability; that he had been in failing health for several years prior to March 31, 1932; that he had smothering spells, pains around his heart and shoulder, his feet would cramp at night and he would have to take his toes and pull them up, that his knees would cramp and he could not sleep at night; that he was short winded and would have choking sensations and during the months of March and April, 1932, that it hurt him to work and completely exhausted him; that his condition had not improved and that he was unable to perform any work without suffering pain and discomfort. Several lay witnesses and two physicians corroborated him.

Dr. Hardy and Dr. Fitzgerald both stated that at the time of the trial he was unable to perform work.

Dr. Hardy testified that he examined him in May, June and October, 1932, and, upon each examination found that he was in poor physical condition; that he was not able to work and that work would aggravate the conditions and that these conditions which disabled him were permanent in their character.

Dr. Fitzgerald testified that when he made his examination during the progress of the trial, that he found him to be unable to work because of lead poisoning, chronic bronchitis and hyperthyroidism, but, in his opinion, if the thyroid trouble were removed he might be able to work, but that his opinion was speculative and, unless an operation would cure him he was permanently disabled and that before he would be able to work the lead condition and the chronic bronchitis and the hyperthyroidism would all have to be cured and, he further found that the blood condition was bad, in that the blood cells were too slow and the white blood count was too high.

The plaintiff testified that he was twenty-seven years old; went to the seventh grade in school; worked for the Lead Company eight years and was discharged April 30, 1932, because of reduction of force; that during his first employment he worked in the sintering plant in dust and gas, doing heavy work, then on the crusher, crush-

ing the red-hot ore which was dusty work, then unloading lead ore, afterwards in the mixing room, and then at the slug furnace where the hot slug is dumped after it goes through the furnace where there is much gas; that at the time he finished work he was engaged in alternating one week in the sintering plant and one week on the crusher; that he wore a mask but could still inhale dust; that some days he did not feel like working and would not go in; that the plant was running four or five days a week for about the last year of his employment; that on March 31, 1932, and immediately before that time he had pains around his heart that went up into his shoulders; his feet and knees would cramp at night and he could not sleep; had smothering spells and headache and that his neck and throat hurt him; that he coughed and often choked; that he consulted the regular physician of the Lead Company sometimes twice a week; that he had appendicitis in 1929 and after that some trouble sleeping at night; that when he got through with his daily work he could hardly get home and that he could not rest and did not feel able to do a day's work.

It was further shown by the chief clerk of the employee's department, and who kept the insurance records of the men, that the group insurance policy showed the coverage of $3,250 on plaintiff for eighty-one months of $44.62 each in the event of total and permanent disability while the policy was in force; that the policy of insurance was terminated on March 31, 1932, because it was on a monthly basis and was allowed to lapse by the Lead Company and a new policy was issued without the disability feature; that plaintiff worked during the month of April after the termination of the insurance policy for an average of about five eight-hour shifts each week during that month and that he received wages of $2.80 a day of eight hours.

Defendant offered an instruction in the nature of a demurrer to the evidence at the close of plaintiff's testimony, which was refused by the court and a similar instruction at the close of all the evidence, which was likewise refused.

The court gave an instruction for the plaintiff to the effect that if the issues were found in plaintiff's favor the jury should assess his damages at a sum not to exceed $490.82.

The jury returned a verdict in favor of plaintiff for that amount, and, after an ineffective motion for a new trial, the cause is brought on appeal by defendant to this court for review.

It is conceded that the provisions of the policy, other than those set out hereinbefore, entitled plaintiff to eighty-one monthly installments of $44.62 each, if he became totally and permanently disabled while the policy was in force. The policy is a monthly renewable term policy. It was in force on March 31, 1932, but it was not thereafter renewed. Plaintiff continued in the employ of the company

after March 31, 1932, until the latter part of April of the same year, when he was laid off.

Defendant, in its brief, devotes much time and much forceful argument to its contention that the court should have directed a verdict for defendant at the close of all the testimony. We have set out somewhat in detail hereinbefore the circumstances and conditions under which plaintiff worked and the effect it had upon him. We quote approvingly the following from Moss v. Metropolitan Life Insurance Co., an opinion from this court by Sutton, Commissioner, dated July 2, 1935, and not yet reported, the following:

"Policy provisions insuring against total and permanent disability, such as the provision here involved, are not given a strict and literal construction, but are given a liberal construction, on the theory that the fair intention of the parties to the contract is that the insured shall receive indemnity when he is disabled as a result of bodily injury or disease to the extent that he is unable to carry on any occupation, business, or profession, which without the disabling injury or disease he would be able to engage in. It is not required that he shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform in the usual and customary way substantially all the material acts of any occupation, business, or profession, he would be able to engage in but for his disabling infirmity. The mere fact that he performed the duties of his occupation for a time is not sufficient in itself to defeat his claim of total disability. He may have worked when really unable and at the risk of endangering his health or life. The fact that under distressing circumstances a strong will and great courage caused him to do what he was unable to do without great physical pain and effort, or without endangering his health or life, or what common care and prudence would require a person in his condition to desist from doing, does not as a matter of law show that he was not totally disabled. [Rickey v. New York Life Ins. Co. (Mo. App.), 71 S. W. (2d) 88; Missouri State Life Ins. Co. v. Case (Ark.), 71 S. W. (2d) 199; Kemper v. Police & Firemen's Ins. Ass'n (Tex.), 44 S. W. (2d) 978; Lumbra v. United States, 54 Sup. Ct. Rep. 272; Home Life Ins. Co. v. Ward (Ark.), 75 S. W. (2d) 379; Kinyon v. Kinyon (Mo. App.), 71 S. W. (2d) 78; McMahon v. Supreme Council, 54 Mo. App. 468; Travelers' Ins. Co. v. Turner (Ky.), 39 S. W. (2d) 216; James v. United States Casualty Co., 113 Mo. App. 622, 88 S. W. 125; Aetna Life Ins. Co. v. Wyant (Ky.), 61 S. W. (2d) 50; Mutual Benefit Health & Accident Ass'n v. Bird (Ark.), 47 S. W. (2d) 812; Foglesong v. Modern Brotherhood of America, 121 Mo. App. 548, 97 S. W. 240; Equitable Life Assur. Soc. v. Merlock (Ky.), 69 S. W. (2d) 12; Prudential Ins. Co. v. Harris (Ky.), 70 S. W. (2d).

949; Kane v. Metropolitan Life Ins. Co. (Mo. App.), 73 S. W. (2d) 826.]''

It necessarily follows that under the testimony in this case and under the authorities set out above, we would not be justified in saying as a matter of law that the plaintiff did not become totally and permanently disabled while the policy was in force within the meaning of same.

Complaint is also made by defendant as to instructions 1 and 2, given on behalf of plaintiff. The instructions as well as the arguments advanced by defendant against their correctness, are very similar to those in the Moss case, supra, and for the reasons therein assigned we hold that there was no reversible error attending the giving of plaintiff's instructions.

Defendant further complains that the verdict is excessive and that the trial court should not have given plaintiff's instruction No. 3, which authorized the jury, in the event it found in favor of plaintiff, to assess his damages at a sum not to exceed $490.82. We hold this complaint is well taken. The policy provision is that the defendant will commence to pay the monthly installments six months after receipt of due proof at its home office. There is no dispute as to the time when such due proof was received at the home office. It was received on June 8, 1932. The six months, which the policy provided as being the time which should elapse from the reception of the proofs until the agreement to commence to pay the monthly installments became effective, would expire on December 8, 1932. This clause in the policy in respect to the six months waiting period fixes the time when the liability of the company to commence to pay the monthly installments arises. Its terms are clear and unambiguous and we must give it effect in accord with its plain, clear and unambiguous meaning. Therefore, as this suit was filed on January 11, 1933, only two months' installments can be counted as becoming due and payable prior to the date of the institution of the suit, to-wit, the month expiring December 8, 1932, and the month expiring January 8, 1933. The subsequent monthly installments sued for were not due until after the date of the filing of the suit, consequently, plaintiff was not entitled to recover for more than the installments for those two months above mentioned amounting to the sum of $89.24.

It therefore follows that if the plaintiff within ten days shall file a *remittitur* of $401.58, the judgment of the circuit court will be reversed and the cause remanded with directions that a new judgment be entered in favor of plaintiff against the defendant, in the sum of $89.24 with interest thereon at the rate of six per cent per annum from October 17, 1933, the date of the original judgment. Otherwise, the judgment is reversed and the cause remanded for a new trial. *Becker* and *McCullen, JJ.*, concur.