STATE MUT. LIFE ASSUR. CO. OF WORCHESTER, MASS.

v.

DISCHINGER et al.

No. 43528.

Supreme Court of Missouri.
Division No. 1.

Dec. 14, 1953.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 11, 1954.

Douglas H. Jones, James J. Connell and Douglas L. C. Jones, St. Louis, for appellant Violet J. Dischinger.

Dubail & Judge, St. Louis, for appellant Marie B. Dischinger.

James C. Jones, Jr., Franklin Ferriss, Jones, Hocker, Gladney & Grand, St. Louis, for respondent.

DALTON, Judge.

On March 18, 1948, Carl F. Dischinger (hereinafter referred to as the insured) instituted an action against the State Mutual Life Assurance Company of Worchester, Massachusetts (hereinafter referred to as the insurer, respondent) upon three "twenty premium payment life insurance policies," on all of which policies the premiums had been fully paid. The insured asked (1) for an adjudication of the rights of the respective parties in and to the said policies; (2) to recover a money judgment for certain disability benefits alleged to have accrued under the terms of the policies by reason of the insured's total and permanent disability from and after March 13, 1946; (3) for the issuance of new policies to the insured, but payable on death to Violet J. Dischinger, his second wife, rather than to

Marie B. Dischinger, his first wife, from whom he had been divorced; and (4) for penalty and attorney fees for vexatious refusal of the insurer to pay the amounts alleged to be due the insured as disability benefits under the policies and for vexatious refusal to change the named beneficiary in each of said policies.

The said policies had been issued on the life of the insured in August 1922 and provided for death benefits in the sum of $2,000, $3,000 and $4,000, respectively, and in the event of permanent and total disability for certain disability benefits. All of the said policies had been pledged as collateral security for policy loans obtained by the insured from the insurer. The insurer had theretofore (under a provision of the policy loan agreement) undertaken to cancel the second or $3,000 policy on July 24, 1946 and had undertaken to cancel the first or $2,000 policy on August 2, 1946 both of them on the ground that on the respective dates the said policy loans with interest had equalled or exceeded the cash surrender value of the respective policies. Prior to such cancellation, the insurer had given due notice and the insured had failed to pay the required interest necessary to keep the policies and loans in force and effect. The requests for change of beneficiary in the said policies had been refused by the insurer because the request for such change was not accompanied by said policies.

After the insurer's answer had been filed to the insured's action, Marie B. Dischinger was, by consent, added as a party defendant and she appeared and filed an answer and cross-bill asking judgment that the said policies or any new policies issued to the insured be delivered to her as security for payment of delinquent installments under a judgment for divorce and for the support of her child, as entered in her favor and against the insured on July 6, 1942.

Thereafter, the death of the insured on April 27, 1949 was suggested and, acting under the refusal of letters of administration on his estate, Violet J. Dischinger, his widow, appeared and was substituted as plaintiff and the pleadings were amended accordingly.

Thereafter, on June 20, 1949, the insurer, the defendant in the prior action, instituted an action in interpleader in the said Circuit Court of the City of St. Louis against both Marie B. Dischinger and Violet J. Dischinger, in which action, the insurer, as plaintiff, admitted that a net amount, to wit, $1,744.34 (after the payment of the policy loan and interest) was due and payable as death benefits under the $4,000 policy issued to the insured. The insurer sought an order permitting the payment of the said sum into court; and that defendants, the widow of deceased and his divorced wife, be required to interplead therefor, and that the insurer be discharged.

Violet J. Dischinger answered setting forth her claims to the fund and filed a petition asking affirmative relief, to wit, for the recovery of certain disability benefits claimed to be due under the $4,000 policy, and she further sought to recover the net amount of death benefits due and payable on the other two policies (after the payment of the policy loans and interest) and also disability benefits alleged to be due and payable under said policies. Defendant, Marie B. Dischinger, also filed an answer and cross-bill claiming the proceeds of the policies as the beneficiary named therein and on the ground that the policies had been delivered to her (at the time of her divorce from the insured) with the understanding and agreement that they and the proceeds thereof were to be and remain her property. Thereafter, by stipulation of the parties, the two pending causes were consolidated and proceeded under the style of the interpleader action and the issues for decision were stipulated at a pretrial conference.

Thereafter, a joint answer and counterclaim was filed on behalf of both defendants (claimants) together with a stipulation as to the disposition (as between them) of such proceeds of the policies as might be recovered.

The necessary facts will be subsequently stated, but the theory upon which the defendants-appellants (claimants) proceeded was that the insured became totally and permanently disabled on March 13, 1946, and remained so until the date of his death on April 27, 1949; that by reason of an oral notice to Eugene Reilly, an agent of the insurer, the insurer received actual notice of such permanent and total disability on May 15, 1946 and formal notice of claim on July 22, 1946; that, upon such notice, liability commenced as of March 13, 1946; that a total of $90 per month of total disability benefits under the terms of the policies "became due with the date of disability"; that the policies provided that unpaid interest on policy loans should be deducted from disability payments; that the insurer should have credited the insured with the accrued disability benefits in order to discharge the interest due on the policy loans; that the insurer was indebted to the insured in the sum of $360 on June 24, 1946 and to an even larger amount on August 2, 1946; that, therefore, the insurer had no right to cancel the $3,000 policy on June 24, 1946, or the $2,000 policy on August 2, 1946; and that disability benefits continued to accrue under all of the policies until the death of the insured, when death benefits also became due and payable.

At the trial, the right of the insurer to interplead the net proceeds of the death benefits under the $4,000 policy (after the payment of the policy loan and interest) was conceded. It was agreed by all parties that the plaintiff-insurer be allowed the sum of $200 as attorney fees for interpleading the $1,744.34 fund. The cause of action at law involving the claims of the defendants was tried to the court without the aid of a jury and upon issues theretofore stipulated at a pre-trial conference. The stipulated issues were as follows: (1) Was the verbal notice of insured's disability given to Eugene Reilly, an agent for the State Mutual Life Assurance Company, sufficient compliance by the insured of the provisions calling for due proof of disability? (2) Was Eugene Reilly such an agent, that notice to him would be a sufficient compliance with the due proof provisions of the policies? (3) Assuming proper and sufficient due proof of disability was made, when would disability benefits begin to accrue? (4) Must interest due on the loans be paid out of disability benefits only? (5) The issue of possible statutory penalties for vexatious refusal to pay.

The trial court found the issues for the insurer and against the defendants and held:

(1) That, under the terms of the policies, the furnishing of due proof of the total and permanent disability of the insured was a condition precedent to any obligation on the part of the insurer to pay the insured disability benefits; that due proof was required before any disability benefits accrued under the policy provisions; and that there was a difference between notice of a claim and due proof of the loss insured against;

(2) That the record showed that Eugene Reilly was a mere soliciting agent for the insurer; that it failed to show Reilly was a general agent for the insurer and entitled to receive notice; that notice of a claim was not due proof of the loss insured against; that actual notice was not a compliance with the terms of the policies; that the record did not show acts and conduct to make it apparent to the insured that Reilly was a general agent for the insurer or entitled to waive the due proof provisions of the policy; that due proof of disability was not waived; and that the policy provisions prohibited modification by an agent;

(3) That, regardless of the court's findings on points one and two, yet under the provisions of the policies, payments of disability benefits in any case would not have begun in time to have prevented the termination of the policies on July 24 and August 2, 1946, when the indebtedness equaled or exceeded the cash surrender value of the respective policies because, under the policy provisions, disability benefits did not become due or payable until six months after the receipt of due proof of such permanent total disability; and

(4) That the provision in the policies that disability benefits should be applied in liquidation of interest on policy loans did not prevent the operation of the provision in the policy loan certificates calling for the termination of the insurance, when the outstanding indebtedness against the respective policies equaled or exceeded the cash surrender value; and that the provision for the application of disability benefits to interest could only come into operation when disability benefits were due and payable by the insurer.

The court found it unnecessary to rule the fifth issue submitted. Judgment was entered against the defendants as to all amounts sought to be recovered in excess of the admitted liability of the insurer. The defendants have appealed.

■ The appellate jurisdiction of this court is invoked on the ground that the amount in controversy exceeds $7,500, exclusive of costs, Sec. 3, Art. V, Const. of Missouri 1945, V.A.M.S., in that defendants seek to recover $1,605.02 disability and net death benefits under the $2,000 policy, $2,401.25 disability and net death benefit under the $3,000 policy and $480 disability benefits under the $4,000 policy between March 13, 1946, and March 13, 1947, with interest from the dates the several disability payments were alleged to be due and with interest on the death benefits from date of suit, together with a ten percent penalty for vexatious refusal to pay the amounts due and a reasonable attorney fee in the sum of $2,500. The amount in controversy gives this court jurisdiction of the appeal.

■ While defendants (claimants) have appealed from the judgment entered against them in the trial court, no errors or defects therein are complained of on appeal. The cause is briefed and presented in this court like an original proceeding that had not been tried and determined. The judgment of the trial court is not mentioned, except by way of recital in the statement of facts to show what disposition was made of the cause. Appellant's brief contains no specifications or even assignments of error and we are not asked to reverse or modify the judgment.

This court does not review cases on appeal in the same manner that cases are presented for decision and ruled in the trial court. Supreme Court Rule 1.08 provides that "the brief for appellant shall contain * * * (3) The points relied on, *which shall specify the allegations of error* * * *." (Italics ours.) Section 512.160 RSMo 1949, V.A.M.S., provides "1. Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, *no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court. 2.* No appellate court shall reverse any judgment, unless it *believes that error was committed by the trial court against the appellant,* and materially affecting the merits of the action." (Italics ours.)

Section 510.310 RSMo 1949, V.A.M.S., with reference to appellate procedure in cases tried below without a jury, provides: "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. *The judgment shall not be set aside unless clearly erroneous,* and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Appellants should have complied with the rules of this court and specified the particular rulings of the trial court which were deemed to be erroneous and should have assigned the grounds for believing the rulings to be erroneous. Berghorn v. Reorganized School Dist., Mo.Sup., 260 S.W.2d 573, 580.

Appellants contend (1) that actual notice and claim for benefits was given to insurance agent Reilly, an employee of the insurer on May 15, 1946; that formal claim was made and given the company on July 23, 1936; that such actual notice was "sufficient proof of disability"; (2) that, as the policies provided for disability benefits, the

disability benefits accrued from date of disability; (3) that the unpaid interest on the policy loans should have been deducted from the disability payments and no policies should have been cancelled for default in payment of interest; (4) that, since the insurer breached its insurance contract by its refusal to change beneficiaries when the insured demanded such change, it could not insist upon a strict performance by the insured of his agreement to pay interest, nor could it cancel the policies for nonpayment of interest on policy loans; (5) that the insurer had no right to refuse to make the change of beneficiaries, as requested, merely because the insured was unable to produce the insurance policies; (6) that "appellants should be allowed interest on the sums found due them"; and (7) that the failure and refusal of the insurer to change beneficiaries and pay appellants the amounts due them under the policies subjected the insurer to the payment of penalties and attorney fees under the statutes so providing.

■. It is apparent that points four and five were not presented to the trial court for decision under the stipulated issues, nor was the issue expressly decided by the trial court, as required by Sec. 512.-160, supra. However, the record fails to show any breach of the insurer's contract when it failed to change beneficiaries without the production of the policies. Further, the contracts with reference to the right of the insured to change the beneficiary in the policies were different contracts from the "policy loan certificates" wherein the insured "agreed to pay interest on said indebtedness at the rate of six (6) percentum per annum, payable semi-annually," that is, interest on the amounts of the respective policy loans.

As stated, Marie B. Dischinger, the then wife of the insured, was named as beneficiary in each of the policies. In his written applications for each of the proposed policies, the insured reserved the right to change the beneficiary and each of the policies as issued provided: "If the right to do so has been reserved in the application for this policy, the insured * * * may change and successively change the beneficiary hereunder * * * any change in the beneficial interest shall be subject to the right of any assignee * * *. Every change or designation must be made by written notice to the Company at its Home Office, accompanied by this policy, and will take effect only when endorsed on this policy by the Company."

It was admitted at the trial that in June 1944 the insured made a written request on the insurer's regular form for the change of the beneficiary of each of said policies from Marie B. Dischinger to Violet J. Dischinger but, because of the insured's inability to obtain and transmit to the insurer the alleged policies, which were then in the possession of Marie B. Dischinger, who declined to surrender them for the necessary endorsement thereon, the insurer declined to make the requested change of beneficiaries and, on May 14, 1945, the insurer's local cashier returned the written request for change of beneficiary to the insured. Davidson v. St. Louis Transit Co., 211 Mo. 320, 359–360, 109 S.W. 583.

After the stipulations as to the disposition of the interpleader action and after the determination of the amount of attorney fees to be allowed in said action, counsel for defendants advised the court with reference to the insurer's refusal to change the beneficiary as follows: "The only point we make in the case is that they (the insurer) vexatiously refused to change the beneficiary at that time, that is still in the case." There is no suggestion that such refusal to change the beneficiary was presented as a defense to the accrual of interest on policy loans or as a waiver of payment of interest on such loans. Further, all of the policies were adversely held under the same circumstances at the time of the denial of change of beneficiary and it has now been stipulated that the death benefits payable under one of the policies could properly be paid into court in the interpleader action and that the insurer (plaintiff in the interpleader action) was entitled to the payment of an attorney fee in that case. The record further shows that both

defendants were claiming the proceeds of the policies; that the rights of both claimants in and to the proceeds of the policies was recognized in the stipulated settlement; and that such proceeds were to be distributed between them as per stipulation. When the interpleader action was disposed of it was admitted "that there was a reasonable question involved" and that the insured had "the right to hold up the fund." The same facts as to the adverse claims apply to all of the policies. No wrongful detention of the policies or fraudulent conduct of either claimant appears from the record. Under the provisions of the policies and the admitted facts, no breach of the insurer's contract appears from the insurer's refusal to change the beneficiaries in the policies on request, but without the production of the policies for endorsement.

The applicable rule is well stated in 29 Am.Jur., Insurance, Sec. 1315, p. 984, as follows: "It is well settled that the insurer may, as a matter of contract and by appropriate stipulation or condition expressed in the policy, prescribe or regulate the method of changing beneficiaries, and ordinarily, a change of beneficiary can be accomplished only in the manner pointed out in the policy, with the result that an attempt to make such change in any other manner is ineffectual." And see 46 C.J.S., Insurance, § 1175(c) (2), page 75.

Each of the policies contain provisions with reference to policy loans and with respect thereto provided: "Failure to repay any such loan or to pay interest thereon shall not avoid this policy while the total indebtedness hereon is less than such loan value at the time such default in payment occurs nor until thirty-one days after notice has been mailed by the Company to the last known address of the insured and assignee if any."

As stated, loans were obtained on all of the policies and the insured executed and delivered to the insurer his loan agreements on which the loans were obtained, the policies being assigned to the company as sole security for the loans. These loan agreements contained the following provisions: "If at any time the total indebtedness against said policy (whether represented by this or any other certificate or certificates of indebtedness outstanding against said policy), together with any unpaid interest thereon, shall equal or exceed the cash surrender value of said policy, the Company's liability thereunder shall terminate automatically and this certificate shall become void."

Under the policy provisions in question and facts shown, the refusal of the insurer to change the beneficiary in the policies could not prevent the insurer from enforcing the provisions of the policy loan certificates either as to the accrual of interest on such loans or as to the agreement for the termination of the policies under the conditions therein specified. Interest accrued on the loans and the provisions of the policy loan certificates remained in effect. No improper or vexatious refusal to change the beneficiary in the policies appears from this record. The insurer properly canceled the two policies in question when the indebtedness against the respective policies and unpaid interest thereon equaled or exceeded the cash surrender value thereof. The only question remaining is whether disability benefits accrued and the insurer became indebted to the insured in sufficient time and in sufficient amount so that unpaid interest should have been paid from disability benefits and cancellation of the policies have been avoided.

Appellants say that after the pretrial conference and the consolidation of the cases, "all issues between the two claimants were disposed of and compromised and the only issue left for determination of the trial court was the right of the insurance company to cancel the two policies and to refuse to credit the disability benefits then accrued, in order to discharge the interest due under policy loans, and to pay the balance to beneficiary Violet Dischinger, his widow." (Italics ours.) However, if no disability benefits accrued, or became due or payable to the insured prior to the cancellation of the two policies, there were no disability benefits to be applied to the discharge of interest on the policy loans. Accordingly, we shall assume without de-

ciding that "proper and sufficient due proof of disability was made," as contended by appellants, and determine when disability benefits began to accrue.

The policies provided:

"If the insured hereunder * * * shall furnish due proof that * * * because of accident or disease he has become wholly, continuously and permanently unable to pursue any gainful occupation and presumably for life will be unable to perform any work, mental or manual, or engage in any business for compensation or profit * * * the Company will * * pay the insured one percent of the face amount of this policy, exclusive of any paid-up additions, and a like amount each month thereafter during the continuance of said total disability of the insured prior to the maturity of this policy.

"The first of said payments shall be made six months after the receipt of such proof of said disability, and then only if it shall appear that the insured is still totally, permanently and incurably disabled as defined above. * * *

" * * * Interest on any indebtedness to the Company under this policy shall be deducted from the amounts paid during disability."

Appellants recognize that "the date of accrual of benefits is vital," but say that $90 per month disability benefits became due beginning with the date of disability. Appellants' theory is that "the first paragraph (quoted above) grants a benefit and contains no words of limitation or reference to any other part of the contract of insurance, and is complete in itself." Appellants contend that paragraph one is repugnant to and directly contradictory of the second paragraph in that, "the first says we will pay if the insured becomes disabled; while the second says, we will pay only if insured is totally, permanently and incurably disabled six months after 'proof of disability' is received by us." Appellants insist that "the first paragraph should be enforced and the second paragraph rejected." Drucker v. Western Indemnity Co. of Dal-las, Texas, 204 Mo.App. 516, 223 S.W. 989, 991. Appellants say that "the occurrence of the disability is the event which creates the right of the insured to disability benefits"; that the furnishing of proof of total and permanent disability is only prerequisite to the actual receipt of such benefits; and that such proof is generally designated as a condition subsequent. Appellants cite Hablutzel v. Home Life Ins. Co., Mo.App., 52 S.W.2d 480, affirmed 332 Mo. 920, 59 S.W.2d 639; Mathews v. Modern Woodmen, 236 Mo. 326, 346, 350, 139 S.W. 151; Roseberry v. American Benevolent Ass'n, 142 Mo.App. 552, 121 S.W. 785, and other cases.

The cases cited are clearly distinguishable in view of the language of the policies under consideration here. The decision in the Hablutzel case was based (1) upon an ambiguity in the language of the policy which ambiguity the court resolved against the insurer and (2) upon the acts, conduct of that insurer, and the construction it placed on it own policy. The Mathews decision is also based in part upon the application of the rule that if the contract is open to two constructions, one favorable to the insured and one not, the courts will take the insured's view. The Roseberry decision was in part based upon the application of "the rule that insurance contracts shall be construed liberally in favor of the insurance and against the insurer." 142 Mo. App. 552, 560, 121 S.W. 785, 787. These rules do not aid appellants under the facts of this case.

The applicable rule is stated in Mathews v. Modern Woodmen, 236 Mo. 326, 139 S.W. 151, 155, as follows: "The just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized away if that course be reasonably possible." And see

Myers v. Union Electric Light & Power Co., 334 Mo. 622, 66 S.W.2d 565, 568.

The rule applies to insurance contracts. "Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made." Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523, 526, 80 A.L.R. 950. And see State ex rel. Prudential Ins. Co. v. Shain, 344 Mo. 623, 127 S.W.2d 675, 676.

The policies without ambiguity or contradiction provided that the first payment of monthly disability benefits would not be made until six months after the receipt of due proof of said disability and then only under specified conditions. The provision for such a waiting period did not create any conflict in the policy terms. Moss v. Metropolitan Life Ins. Co., 230 Mo.App. 70, 84 S.W.2d 395, 399(8), certiorari quashed State ex rel. Metropolitan Life Ins. Co. v. Hostetter, 338 Mo. 589, 92 S.W.2d 122; Mandel v. John Hancock Mutual Life Ins. Co., Mo.App., 145 S.W.2d 449, 451; Farmer v. Metropolitan Life Ins. Co., 230 Mo. App. 80, 85 S.W.2d 235, 238. Due proof of total and permanent disability and a waiting period of six months thereafter during a continuance of such disability were conditions precedent to the insurer's liability to make the initial payment. Assuming that due proof was made on May 15, 1946, no indebtedness to the insured accrued during the six month waiting period and no liability or indebtedness of the insurer to the insured came into existence during such period or prior to July 24, or August 2, 1946, so as to be available for application to the discharge of the interest on the policy loans prior to the automatic terminations or cancellation of the policies under the terms of the policy loan certificates executed by the insured.

In view of the issues stipulated in the trial court, the admissions in appellants' brief and appellants' failure to point out specific errors and assign the grounds therefor, it is unnecessary to review other issues appearing from the pleadings and disposed of in the judgment.

The judgment is affirmed.

All concur.